J-A25037-16

2016 PA Super 237

| MARK E. KELLEY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LAURIE S. PITTMAN AND BEACON PSYCHOLOGICAL ASSOCIATION OF PENNSYLVANIA, LLC. | |
| APPEAL OF: LAURIE S. PITTMAN | |
| Appellant | No. 384 MDA 2016 |

Appeal from the Order Entered February 18, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2014-06752

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED NOVEMBER 04, 2016**

Appellant Laurie S. Pittman, Ph.D., appeals from the discovery order entered on February 18, 2016, in the Court of Common Pleas of Cumberland County which revised the information the trial court had ordered her to disclose to Appellee Mark E. Kelley in its prior discovery order entered on February 4, 2016. For the reasons that follow, we hold that the pretrial discovery orders at issue are immediately appealable pursuant to the collateral order doctrine, and we reverse.

The trial court set forth the relevant facts and procedural history herein as follows:

_____

[*]Former Justice specially assigned to the Superior Court.

Statement of Facts and Procedural History

Though the instant action was commenced in 2014, it has at its root the drawn out and procedurally torturous divorce and custody action between [Appellee] and Jessica Kelley, docketed to No. 2010-06305 in the Cumberland County Court of Common Pleas. In the course of that action, Jessica Kelley engaged the services of [Appellant][1] for the performance of a custody evaluation. The custody evaluation was performed; however, it was performed without [Appellee's] consent or participation. The evaluation relied solely on documentary evidence and interviews provided by Jessica Kelley and the children, all conducted in one day, during a roughly six hour long period. The roughly forty page custody evaluation report contained recommendations regarding custody arrangements, as well as recommending that [Appellee] undergo therapy. The custody evaluation report was entered into evidence, and [Appellant] testified with regard to the contents of the report, over [Appellee's] objection.

[Appellee] commenced the case by the filing of a writ of summons on November 29, 2014. [Appellant] entered a rule to file complaint on the [Appellee] on or about January 05, 2015. [Appellee] filed the Complaint on February 09, 2015, and served both Defendants, [Appellant] and Beacon Psychological Association. [Appellee] alleged that his character was defamed by [Appellant's] report and the dissemination of the report to other mental health professionals and to the [c]ourt. [Appellee] also alleged that [Appellant] was negligent in preparing her evaluation without any input from [Appellee], despite [Appellant] noting in her report that Jessica Kelley was at times untruthful and attempting to manipulate the findings of the report. [Appellee's] certificate of merit as to [Appellant] was filed on March 10, 2015.

On March 25, 2015, [Appellant] filed preliminary objections to [Appellee's] complaint, which were listed for oral argument before a panel of this [c]ourt. On April 09, 2015, [Appellee] entered a default judgment against Defendant, Beacon Psychological Association. On April 21, 2015, this [c]ourt entered an Order overruling [Appellant's] preliminary objections. An answer with new matter was filed by [Appellant] on May 08,

---

[1] Appellant is a licensed forensic psychologist.

2015. [Appellee] filed a reply to [Appellant's] new matter on May 28, 2015.

On September 16, 2015, [Appellee] filed the motion to compel supplemental discovery at the heart of the instant appeal. [Appellant] filed a response to the motion on September 30, 2015; [Appellee] filed a reply to [Appellant's] response on October 14, 2015; and the matter was scheduled for oral argument on October 22, 2015. Following the sudden and unexpected incapacitation of [Appellant's] counsel, the oral argument was continued until January 22, 2016, to allow [Appellant] to present her position on the motion to compel discovery. In the interim, on October 28, 2015, [Appellant] filed an objection to [Appellee's] subpoena for the production of documents and records.

On January 22, 2016, this [c]ourt heard [Appellant's] oral argument on this matter and took the parties' positions under advisement. On February 04, 2016, this [c]ourt entered the appealed-from Order, which read in relevant part (emphasis original):

Accordingly, **IT IS HEREBY ORDERED AND DIRECTED** that [Appellant] shall disclose to [Appellee] the following:

1. [Appellant's] date of birth.

2. [Appellant's] current home address.

3. For each legal matter in which she testified as an expert witness since 2012 she will provide the caption of each case, the county which the case was filed and the date on which she testified.

4. All documents and records [Appellant] reviewed in preparation of her expert report in the case of [Appellee] v. Jessica Kelley, No. 10-6305 Civil, Cumberland County, Pennsylvania.

5. Copies of all tests completed by Jessica Kelley and her children in connection with the custody evaluation report she prepared in the case of [Appellee] v. Jessica Kelley, 10-6305 Civil, Cumberland County, Pennsylvania[.]

On February 18, 2016, following communication with counsel for both parties, this [c]ourt issued a second Order, clarifying and limiting the material to be disclosed by expressly prohibiting disclosure of [Appellant's] home address by [Appellee's] counsel to [Appellee]. [Appellant] filed her motion for reconsideration on February 19, 2016; [Appellee] filed his reply on February 24, 2016; and [Appellant] filed her sur-reply on February 26, 2016. On March 04, 2016, this [c]ourt denied [Appellant's] motion for reconsideration and declined to certify this discovery matter as fitting for an interlocutory appeal pursuant to 42 Pa.C.S.A. §702.[2] [Appellant] filed her notice of appeal to the Superior Court on March 07, 2016.

Trial Court Opinion, filed 5/9/15, at 2-5.

On March 21, 2016, Appellant filed her concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which spanned three pages and contained twelve numbered errors. On May 9, 2016, the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

In her brief, Appellant presents the following statement of the questions involved:

1. Whether the trial court erred by granting Appellee['s] [] Motion to Compel discovery and ordering the disclosure of confidential mental health records of non-parties whose safety and well-being would be jeopardized by the disclosure of such records to a known abuser?

2. Whether the trial court erred by ordering the disclosure of mental health records of non-parties in violation of the psychologist-patient privilege, HIPPA, and statutory prohibitions

---

[2] Specifically, the trial court stated that: "this matter appearing to be a simple discovery issue pertinent to [Appellee's] claim of defamation and professional negligence on the part of [Appellant], the request that this [c]ourt certify this matter as an interlocutory appeal pursuant to 42 Pa.C.S.A. § 702, is **DENIED**."

- 4 -

against the release of confidential records of an abuse counselor?

3.    Whether the trial court erred by ordering the disclosure of Appellant['s] [ ] home address to counsel for Appellee [] where [Appellant] had previously reported [Appellee] to ChildLine and where [Appellant] fears for the safety of her ailing husband and disabled children who reside with her?

Brief of Appellant at 5.

In reviewing the propriety of a discovery order, we determine whether the trial court committed an abuse of discretion and, to the extent that we are faced with questions of law, our scope of review is plenary. ***Berkeyheiser v. A-Plus Investigations, Inc.,*** 936 A.2d 1117, 1125 (Pa.Super. 2007); ***See also PECO Energy Co. v. Insurance Co. of North America***, 852 A.2d 1230, 1233 (Pa.Super. 2004) ("The trial court is responsible for '[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure.'").

Generally, an appellate court's jurisdiction extends only to the review of a final order that disposes of all claims and of all parties or is certified as a final order pursuant to Pa. R.A.P. 341(c). ***See*** Pa.R.A.P. 341(a) and (b). However, Pa.R.A.P. 313(a) provides that "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court." Whether an order is appealable as a collateral order implicates this Court's jurisdiction to entertain an appeal of such an order; therefore, as a threshold

question, we must make an independent determination as to whether the trial court's pretrial discovery orders are appealable as collateral orders pursuant to Pa.R.A.P. 313, despite its holding to the contrary in its March 4, 2016, order. *Commonwealth v. Kennedy*, 583 Pa. 208, 215, 876 A.2d 939, 943 (2005).

A "collateral order" is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Typically, discovery orders are not final, and are, therefore, unappealable. *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa.Super. 2004). Notwithstanding, a discovery order that involves the dissemination of ostensibly privileged or confidential material is appealable as collateral to the principal action pursuant to Pa.R.A.P. 313. *Id*.

As this Court has explained:

> Prior to the decision of the Pennsylvania Supreme Court in *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), Pennsylvania courts did not often entertain interlocutory appeals from discovery orders, unless the discovery order was not related in any way to the merits of the action itself. In *Schwartz*, the Pennsylvania Supreme Court revised this rule and held that an appeal from a discovery order raising a question of the application of a privilege is separable from the underlying issue, so long as the issue of privilege may be addressed by an appellate court without analysis of the underlying issue. *Schwartz*, at 483, 729 A.2d at 551–52.

\*\*\*

The **Schwartz** case proceeded to the Pennsylvania Supreme Court, which held that the trial court's order "compelling the Bureau of Professional and Occupational Affairs to produce its investigative file pertaining to complaints filed against a dentist, [was] appealable under the exception to the final order rule for collateral orders." **Id.** at 549. The Court reasoned that (1) "the issues of privilege raised by the Bureau [could] be addressed without analysis of the alleged negligence of the dentists[,]" thereby meeting the requirement of "separability" for purposes of the collateral order doctrine; (2) the Bureau's assertion that the file was subject to various privileges met the "importance" prong of the collateral order doctrine because it involved "rights rooted in public policy" and impacted "individuals other than those involved in this particular litigation" thereby outweighing the countervailing interests of avoiding piecemeal litigation or delay; and (3) the Bureau's claim would be irreparably lost (thereby meeting the third prong of the collateral order doctrine) if immediate appellate review was not granted because, once purportedly privileged material is divulged, "the disclosure of documents cannot be undone" and subsequent appellate review would be rendered moot. **Id.** at 552. **See also Berkeyheiser v. A–Plus Investigations, Inc.**, 936 A.2d 1117, 1123–24 (Pa.Super. 2007) ("Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action."). . . .

**T.M. v. Elwyn, Inc.**, 950 A.2d 1050, 1056–58 (Pa.Super. 2008) (some internal citations omitted).

We find that, as was the case in **Schwartz**, the discovery order at issue herein meets the requirements of the collateral order doctrine. This Court may examine the issues of privilege Appellant raises without analyzing the underlying claims of defamation of character and professional negligence Appellee set forth in his civil complaint. Also, Appellant's assertion that the requested materials are subject to various privileges, especially when the materials sought may involve sensitive mental health information pertaining

to non-parties some of whom are children, evokes the importance prong of the collateral order doctrine since the privacy rights involved are deeply rooted in public policy. *See also*, *T.M. v. Elwyn, Inc.*, *supra*, at 1058. Moreover, were this Court not to review the propriety of the trial court's discovery orders at this juncture, Appellant's claims of privilege would be irreparably lost, for she would be forced to disclose the requested information in abidance with the trial court's order, and that disclosure could not be undone in a subsequent appeal. *Id*. In addition, her fear for her safety and that of her family could not be assuaged. Upon finding Appellant has met the requirements of the collateral order doctrine, we next proceed to examine the issues she raises in the instant appeal. As these issues are interrelated, we will address them together.

Appellant first explains that although she had set out to perform a traditional custody evaluation, when Jessica Kelley and the Children alleged Appellee had been physically and psychologically abusive toward the Children, she no longer could remain neutral because she effectively became an abuse counselor with an attendant legal obligation to inform the authorities and the trial court of the suspected abuse to protect the Children and their mother under 23 Pa.C.S.A. § 6311. Appellant urges that her interviews, notes, and evaluations concerning the reported instances of abuse are, therefore, statutorily protected under 23 Pa.C.S.A. § 5336(b)(2)[3]

---

[3] This subsection provides that:

and should not be turned over to Appellee through the litigation process. Brief for Appellant at 7-8, 14-15.

Appellant adds that in addition to jeopardizing the safety of Jessica Kelley and the Children, the trial court's order will further result in the violation of statutory provisions prohibiting confidential treatment records of non-parties in contravention to 42 Pa.C.S.A. § 5944.[4]  In this regard,

---

§ 5336. Access to records and information

**(b) Nondisclosure of confidential information.--**The court shall not order the disclosure of any of the following information to any parent or party granted custody:

(1)    The address of a victim of abuse.

(2)    Confidential information from an abuse counselor or shelter.

(3)    Information protected under Chapter 67 (relating to domestic and sexual violence victim address confidentiality).

(4)    Information independently protected from disclosure by the child's right to confidentiality under the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act, or any other statute.

23 Pa. C.S.A. § 5336(b) (footnote omitted).

[4]  Entitled "Confidential communications to psychiatrists or licensed psychologists," this statute states:

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The

Appellant relies upon *In the Interest of T.B.*, 75 A.3d 485 (Pa.Super. 2013) for the proposition that it is not the purpose for which one seeks records that makes them confidential but rather it is the circumstances under which the declarant made them which is dispositive. Brief of Appellant at 18. Appellant avers laws protecting confidential communications to psychiatrists or licensed psychologists serve the purpose of aiding in effective treatment by encouraging clients to disclose information without fear of the disclosure of such sensitive information or reprisal. Appellant also highlights caselaw recognizing the privacy interests of third parties whose medical records become an issue in litigation. Brief of Appellant at 19-20. Appellant also relies upon *Buckman v. Verazin*, 54 A.3d 956 (Pa.Super. 2012) and *Jones v. Faust*, 852 A.2d 1201 (Pa.Super. 2004) in support of her observation that courts of this Commonwealth have consistently recognized the privacy interest of third parties where their medical records were at issue in litigation. Brief for Appellant at 18-20.

Appellant also posits the records Appellee seeks are irrelevant to a civil action involving claims of defamation and professional negligence. Brief of Appellant at 21. Appellant further challenges what she characterizes as the

> confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944 (footnote omitted).

harassing nature of Appellee's request for her home address and date of birth. Appellant reasons that even were this information to be released to counsel only, her interest in her own safety and that of her family outweighs any interest Appellee may have in performing an adequate investigation pertaining to his civil lawsuit, especially in light of the fact she has provided Appellee her full business address. Brief of Appellant at 22-23.

In support of his request for "all records pertaining to his children and ex-wife's custody evaluation and also the address and date of birth of [Appellant]," Appellee maintains that Appellant was employed to perform a custody evaluation, not to act as an abuse counselor. Brief of Appellee at 3. Appellee further asserts that when Jessica Kelley sought the services of Appellant to perform the custody evaluation for use at the custody proceedings, she waived any potential privilege. Brief of Appellee at 4. Appellee also baldy states that his defamation and professional negligence claims will be compromised were he not provided access to the information Appellant reviewed when preparing the report which is the basis for those claims. *Id*. at 6.

In its Rule 1925(a) Opinion, the trial court characterizes the dispute between the parties as centering on the question "of whether [Appellant] improperly engaged in the process of performing a custody evaluation without a court order and without any involvement or participation from [Appellee]." Trial Court Opinion, filed 5/6/16, at 5-6 (footnotes omitted).

The court reasons that because Appellant completed her evaluation and submitted it along with a recommendation that Jessica Kelley be granted sole custody of the Children, she was neither serving as an abuse counselor or as a fact witness in the underlying custody action, but rather "was clearly functioning as a child custody evaluator." *Id*. at 8. As such, the trial court posits that, "any applicable privileges were waived by the act of Mother engaging [Appellant] to provide a custody evaluation for litigation purposes." *Id*. at 14.

Moreover, the trial court relies upon our Supreme Court's decision in *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455 (2003) for the proposition that one has no constitutional right to privacy in her home address because such information is a matter of public record and reasons that her address readily could be accessible should Appellee secure the services of a private detective. In the trial court's view, Appellant has failed to show that her personal safety would be at risk should she be required to divulge this information, especially in light of the fact ChildLine found Appellant's report to be unfounded and no other reported incidents of abuse have been reported since that time. *Id*. at 18-19. Similarly, the trial court believes that in light of *Duncan*, *supra*, Appellant enjoys no reasonable expectation of privacy in her date of birth, which information "is widely available in today's society," and that she has not established she will suffer

"reasonable harm" should Appellee have access thereto. Trial Court Opinion, filed 5/9/16, at 20. We are compelled to disagree.

Pennsylvania's Rules of Civil Procedure permit discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action," whether or not admissible at trial, provided that "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. 4003.1; however, the Rules prohibit irrelevant discovery, or discovery sought for an improper purpose. Pa.R.C.P. 4011; *see also **Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.**, 77 A.3d 1, 12 (Pa.Super. 2013) (stating the matters about which a discovery inquiry is made must bear pertinently upon the matters which one will be required to prove affirmatively at trial). The instant lawsuit involves two counts, the first of which concerns allegedly defamatory statements contained in Appellant's undated, written evaluation report and iterated at the custody hearing held on March 7, 2014. In addition, Appellee sets forth a negligence count wherein he avers that in completing her evaluation report Appellant deviated from the American Psychological Standards.

In a defamation case, a plaintiff must prove: "(1) The defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the

plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." **Porter v. Joy Realty, Inc.**, 872 A.2d 846, 849 n. 6 (Pa.Super. 2005), quoting, 42 Pa.C.S.A. § 8343(a). To prevail in any negligence action, a plaintiff must establish the defendant owed him a duty; the defendant breached the duty; the plaintiff suffered actual harm; and a causal relationship existed between the breach of duty and the harm. The determination of whether there was a breach of duty in a professional malpractice action requires the plaintiff additionally to show that the defendant's conduct fell below the relevant standard of care applicable to the performance of the professional services at issue.   Such a determination typically requires expert testimony since the negligence of a professional encompasses matters not within the ordinary knowledge and experience of a layperson.  **French v. Commonwealth Associates, Inc.**, 980 A.2d 623, 630–31 (Pa.Super. 2009).

We find that the requested information the trial court found to be discoverable in its February 4, 2016, Order, as clarified in its February 18, 2016, Order is both irrelevant to the instant defamation and professional negligence claims and confidential under the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301 *et seq*.

Appellee fails to aver, nor can we discern, how obtaining all documents and records Appellant reviewed in preparation of her written report will further his lawsuit.   Regardless of what information Appellant may have

utilized when compiling her ultimate evaluation, Appellee is in possession of her report which was entered into evidence as an Exhibit at the custody hearing at which time Appellee also subjected her to cross-examination thereon. Indeed, this testimonial and documentary evidence was sufficient for Appellee's expert to prepare a counter-report criticizing Appellant's professionalism. *See* Brief of Appellant at 21. Appellant also provided Appellee with additional information in her answers and objections to Appellee's first set of interrogatories dated September 29, 2015. Simply put, it is not the contents of Appellant's complete file which forms the basis of Appellee's lawsuit, but rather the statements Appellant made in her comprehensive report and at the custody hearing, as well as the standards by which she performed her professional services, which are at issue.

Similarly, Appellee has not established how his broad request for the caption of each legal matter in which Appellant testified since 2012, which most likely would result in a need to reveal the contents of sealed records, would lead to the discovery of admissible evidence in his lawsuit which challenges Appellant's handling of the custody evaluation relative to his Children. To the contrary, Appellee's goal of establishing his case may be accomplished by less intrusive means. For instance, Appellee may question Appellant generally at trial regarding her familiarity with testifying as an expert witness and the means by which she drew the conclusions in her evaluation report in the instant matter. Appellee also can challenge

Appellant's methodologies through his own expert's testimony and counter-report at trial.

In addition, Appellee has Appellant's business address; therefore, we are hard pressed to discern how knowledge of her personal address and her date of birth, even if it is disclosed only to Appellee's counsel, will further Appellee's claims. While the trial court relies upon *Duncan* in reaching its contrary decision, that matter is clearly distinguishable from the one before us. Therein, our Supreme Court reviewed a suppression ruling in a criminal matter and considered the legal issue of whether the appellant had a reasonable expectation of privacy under the Pennsylvania Constitution in the name and address information disclosed by his bank. *Commonwealth v. Duncan*, 572 Pa. 438, 445, 817 A.2d 455, 459 (2003). The trial court speculates Appellant may not be accessible at the time of trial because she indicated she is an independent contractor of Defendant Beacon Psychological Association of Pennsylvania, LLC., *See* Trial Court Opinion, filed 5/9/15, at 19-20; however, the record is devoid of any evidence Appellant intends to sever her relationship with Beacon or that she would not provide a new business address were she to do so.[5] As such, we deem the requested information to be irrelevant in the instant lawsuit.

---

[5] It is also noteworthy that the trial court's position in this regard runs afoul of its prior statement that one's address and date of birth are readily available.

We further find that while Appellant initially came into contact with Jessica Kelley and the Children as a neutral third party in connection with a custody evaluation, when she obtained information of their abuse, she became a mandatory reporter of that abuse. "Pennsylvania's Child Protecti[ve] Services Law, 23 Pa.C.S. § 6301 *et seq.,* requires individuals who, in the course of their employment, come into contact with children to make a report to the local children and youth agency when they have reasonable cause to suspect, on the basis of their medical, professional, or other training and experience, that a child who has come before them in their professional or official capacity is an abused child. 23 Pa.C.S. § 6311." ***Walters v. UPMC Presbyterian Shadyside***, 144 A.3d 104, 130 n. 9 (Pa.Super. 2016), *reargument denied*, (Sept. 21, 2016).

23 Pa.C.S.A. § 6311 provides the following persons are required to report suspected child abuse:

**(a) Mandated reporters.--**The following adults **shall** make a report of suspected child abuse, subject to subsection (b), if the person has reasonable cause to suspect that a child is a victim of child abuse:

(1) A person licensed or certified to practice in any health-related field under the jurisdiction of the Department of State.

\*\*\*

(3) An employee of a health care facility or provider licensed by the Department of Health, who is engaged in the admission, examination, care or treatment of individuals.

\*\*\*

(7) An individual paid or unpaid, who, on the basis of the individual's role as an integral part of a regularly scheduled

program, activity or service, is a person responsible for the child's welfare or has direct contact with children.

23 Pa.C.S.A. § 6311(a) (emphasis added). In addition, the stated purpose

of the Child Protective Services Law is:

> to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S.A. § 6302. Our Supreme Court has stated that this objective

would be frustrated if, for example:

> child death reviews are discoverable to plaintiffs searching for potential mistakes in order to support a lawsuit. **See V.B.T**., at 1333 ("[sections 6339 and 6340] do not include a civil plaintiff seeking discovery in pursuit of a claim for damages based upon alleged conduct of the abused child."). Openness and necessary admissions of employees are vital to improving the care of children subject to CYS and DPW oversight. If candor is not encouraged through confidentiality, improvement will be compromised as employees must inevitably seek to shield their own errors from reviewers out of fear of being sued. This scenario flies in the face of the designed goals of the CPSL. **See Pennsylvania v. Ritchie**, 480 U.S. 39, 60–61, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (as designated in CPSL, Pennsylvania has "compelling interest in protecting its child-abuse information.").

***In re Estate of Wagner***, 584 Pa. 49, 58, 880 A.2d 620, 625 (2005).

In a similar vein, the type of disclosure the trial court's pretrial discovery orders would permit herein, the revelation of information pertaining to children and other non-parties who have not given their consent and personal, identifying information pertaining to a mandatory reporter which may jeopardize her privacy and safety, is not aimed at furthering the purpose of the Child Protective Services Law. Were Appellee permitted to obtain such sensitive information in furtherance of his civil defamation and professional negligence claims, the result would likely create a chilling effect on others who are mandatory reporters of suspected child abuse, whether or not the report is later determined to be unfounded. While Appellee's interest in advancing his civil lawsuit certainly is important, that of our legislature in striving to protect and rehabilitate the victims of abuse is of superior importance. Accordingly, we reverse the trial court's February 4, 2016, and February 18, 2016, discovery orders granting Appellee's discovery requests.[6]

Orders reversed. Case remanded for further proceedings. Jurisdiction relinquished.

---

[6] Given our holding that under the facts presented herein the information Appellee seeks is not relevant and that the discovery orders are in contravention to the Child Protective Services Law, we need not address the effect of HIPPA, the Psychologist-Patient privilege, or statutes relating to the release of the confidential records of an abuse counselor.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/4/2016</u>