# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean Lomax,                       :

                Appellant      :

                             :

            v.                :      No. 121 C.D. 2020

                             :      ARGUED:  March 15, 2021

Alex DeSantis, in his personal capacity, :

City of Philadelphia Office of the      :

Inspector General and Nicole         :

Harrington, in her personal capacity,   :

City of Philadelphia Office of the      :

Inspector General and Anthony Erace,  :

in his personal capacity, City of       :

Philadelphia Office of the Inspector    :

General and Delores Davis, in her     :

personal capacity, City of Philadelphia  :

Department of Revenue           :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                       **FILED:  May 13, 2021**

       Sean Lomax appeals from an order of the Court of Common Pleas of Philadelphia County entering a compulsory nonsuit in favor of Delores Davis, his supervisor from the City of Philadelphia's Department of Revenue.  Additionally, Lomax appeals from the trial court's earlier entry of summary judgment in favor of

three employees from the City's Office of Inspector General (OIG): Alex DeSantis, Nicole Harrington, and Anthony Erace (OIG employees). We affirm.[1]

Lomax managed the City's Mail Processing and Distribution Center (Mail Center), located separately from the Municipal Services Building where he worked. The Department of Revenue oversees the Mail Center. Following notification from a confidential informant that Mail Center employees allegedly were claiming excessive overtime and engaging in misconduct such as napping, drinking, gambling, and watching pornography, the OIG commenced an investigation in the fall of 2015. As part of the investigation, OIG interviewed employees, acquired surveillance photos and videos, and examined time records. Shortly after his July 2016 interview, Lomax resigned.

In September 2016, Lomax appealed his resignation to the Philadelphia Civil Service Commission. Following an evidentiary hearing, the Commission determined that Lomax's resignation was involuntary and required the City to establish just cause for the termination. (Mar. 3, 2017, Comm'n Op. at 4; Reproduced R. "R.R." at 61a.) After two evidentiary hearings in 2017, the Commission concluded that the City lacked just cause and reinstated Lomax to his position with full back pay and emoluments. (Sept. 15, 2017, Comm'n Op. at 5; R.R. at 68a.) The City appealed from the Commission's determination.

---

[1] Lomax filed a praecipe to enter judgment in favor of Davis pursuant to Rule 227.4 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 227.4. Subsequently, the trial court denied Lomax's post-trial motion as moot and stated that it lacked jurisdiction to rule on the merits. (Jan. 14, 2020 Order at 1; Reproduced R. "R.R." at 1378a.) Judgment was entered below pursuant to Rule 227.4(1)(b) upon praecipe of a party (Lomax), because the trial court did not act on the post-trial motion within 120 days. Consequently, the notice of appeal is timely from the entry of judgment.

2

In affirming the Commission's decision, the trial court (Judge Abbe Fletman) concluded that the Commission did not err in determining that Lomax's resignation was involuntary because he proved that OIG notified him that his termination letter was being prepared and that he would lose his pension if he did not resign. (June 25, 2018 Trial Ct. Op. at 8; R.R. at 887a.) Additionally, the trial court concluded that, based on the record the City presented, the Commission did not err in determining that the City failed to establish just cause. In support, the trial court noted the accepted testimony of Lomax, Davis, and OIG Investigator Harrington to the effect that none of them personally witnessed misconduct at the Mail Center. (*Id*. at 8-9; R.R. at 887a-88a.) Additionally, the trial court concluded that the City did not present substantial evidence that Lomax engaged in misconduct or sufficient evidence to connect him to the alleged inefficiencies and misconduct at the Mail Center. (*Id*. at 4; R.R. at 883a.) The City did not appeal.

Amid the Commission's proceedings, the OIG issued a report outlining the results of its investigation. (Oct. 7, 2016 OIG Report at 1-17; R.R. at 39a-55a.) Generally, the report concluded that the Mail Center was highly dysfunctional, with idle employees and nonexistent supervisors. (*Id*. at 15; R.R. at 53a.) It included photographs of several employees purportedly sleeping and one watching pornography on a phone. Additionally, notwithstanding the fact that overtime expenses increased while productivity remained unaffected, the report reflected that no one questioned the increase or visited the site. Notably, the report indicated that the Bell & Howell processing machines were under-utilized and operating at 22% capacity. Further, the report noted the low priority that the Department of Revenue accorded the Mail Center despite increasing evidence of dysfunction and Bell & Howell's efforts to bring attention to the inefficient operations. (*Id*.)

3

As for Lomax's knowledge of any employee misconduct at the Mail Center, the report noted that Lomax claimed ignorance. However, he acknowledged that he spent very little time there despite claiming to have conducted brief site visits around 5:00 p.m. to 7:00 p.m.[2] He conceded that these visits were not daily and that sometimes he did not visit the Mail Center. (*Id*. at 13; R.R. at 51a.)

As for overtime, Lomax acknowledged that the Mail Center regularly operated well into the evenings for a significant period of time and that he personally accrued about four to five hours of overtime every day waiting for the daily volume of mail to be processed. (*Id*.) The report stated that "he was not working at all during this time—he was just idly waiting for the Mail Center to finish because he wanted to have his daily report ready for the next morning." (*Id*.) Accordingly, the report concluded that Lomax made no effort to supervise and was content to accrue overtime each evening "while inexplicably waiting for the employees to finish processing mail that they ignored during the work day." (*Id*. at 15; R.R. at 53a.)

In November 2017, Lomax filed the complaint at issue against the OIG employees and Davis alleging that they defamed him, violated his privacy, and put him in a false light vis-à-vis their actions with respect to OIG's report. Following discovery, the City filed a motion for summary judgment on behalf of all the defendants. The trial court (Judge Frederica Massiah-Jackson) granted the motion with respect to the OIG employees but denied it as to Davis. The trial court concluded that material issues of fact remained as to whether Davis engaged in

---

[2] Michael McLaurin was the on-site supervisor at the Mail Center, overseeing daily operations. During his OIG interview, he resigned without making any further statements regarding his alleged delay of the mail processing during the day and alleged manipulation of overtime in advance of his upcoming retirement. (Oct. 7, 2016 OIG Report at 3 and 14; R.R. at 41a and 52a.)

4

willful misconduct or acted with actual malice. (May 15, 2019 Order at 1; R.R. at 879a.) Consequently, the case against Davis went to a jury trial.

Before trial, the trial court (Judge Sean F. Kennedy) granted Davis's motion *in limine* seeking to preclude Lomax from introducing provided exhibits. Following Davis's oral motion at the conclusion of Lomax's case, the trial court entered a compulsory nonsuit based on Lomax's failure to proffer evidence that Davis participated in drafting the OIG report. (Aug. 20, 2019 Trial, Notes of Test. "N.T." at 116-17; R.R. at 1217a-18a.)

Before this Court, Lomax maintains that the trial court's respective rulings from different judges are problematic and that this Court should vacate the orders entering nonsuit and summary judgment and remand this matter for trial. *See Commonwealth v. Daniels*, 104 A.3d 267, 278 (Pa. 2014) (discussing the coordinate jurisdiction rule, which prohibits "judges sitting on the same court in the same case [from] overruling each other's decisions"). However, as we discuss below, we find no conflict between the trial court's rulings.

**I**

Lomax first argues that the trial court erred in granting summary judgment when he filed a defamation action against individuals who wrote a report alleging that he engaged in misconduct and the Commission determined that there was no evidence of misconduct thereby creating an issue of fact as to whether the individuals' conduct was defamatory.

The entry of summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman*, 589 A.2d

205, 206 (Pa. 1991). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* Our review of an order granting summary judgment involves only an issue of law. *Id.* Hence, our review is plenary.

In granting the summary judgment motion with respect to the OIG employees, the trial court adopted several theories raised by those employees. It concluded that they were protected by high public official immunity, which exempts a high public official from all civil suits for damages arising out of false defamatory statements, even from statements motivated by malice, provided that the statements were made in the course of the official's duties or powers and within the scope of his authority. *Azar v. Ferrari*, 898 A.2d 55 (Pa. Cmwlth. 2006). In the alternative, it determined that they were immune under Section 8550 of the Judicial Code, 42 Pa.C.S. § 8550, for actions taken within the scope of their employment and absent willful misconduct. *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994); *Balletta v. Spadoni*, 47 A.3d 183, 195-96 (Pa. Cmwlth. 2012). In support, it concluded that the findings in the report were not defamatory and that Lomax failed to present evidence that the report was false or that the authors knew that it was false.

On review, we conclude the trial court did not err in determining that the OIG employees were entitled to immunity under the Judicial Code.[3] The investigation that they conducted and the report that they generated fall within the scope of the OIG's role of investigating waste and wrongdoing in the City's

---

[3] By way of analysis, the OIG employees do not appear to be entitled to high public official immunity. Only high public officials may claim absolute privilege as a defense for statements made even if they were false and defamatory. *Hall v. Kiger*, 795 A.2d 497 (Pa. Cmwlth. 2002). The factors to be considered in determining whether someone is a high public official include the nature of the person's duties, the importance of the person's office, and whether the person has policy-making powers. *Id.*

executive branch and preventing and correcting problems in the City's programs and operations. In other words, the OIG employees were doing their jobs.

Moreover, as discussed below, the fact that the Commission determined that there was no evidence of misconduct on Lomax's part did not create an issue of fact as to whether the conduct of the OIG employees who wrote the report was defamatory. In determining that the City failed to establish just cause for Lomax's termination, the Commission considered the testimony of various witnesses but determined that the report and photographs were inadmissible. Consequently, the Commission's determination regarding the lack of evidence of misconduct on Lomax's part did not raise an issue as to whether the authors of the report engaged in defamatory conduct vis-à-vis the report and Lomax.

## II

Lomax next argues that Davis and the OIG employees should be collaterally estopped from asserting that the report was not defamatory given the trial court's final order in the City's appeal from the Commission's determination concluding that there was no evidence of misconduct by Lomax.

"Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment." *J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002). Collateral estoppel bars a subsequent lawsuit when four criteria are met:

> (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

7

*Id.*

In general, Lomax maintains that the City had a full and fair opportunity to litigate the issues presented in this case when it defended its actions before the Commission and that, accordingly, the trial court should have ruled that collateral estoppel barred the City from raising such issues on appeal. However, Lomax waived the issue of collateral estoppel by failing to raise it at trial, in his post-trial motions, or in his statement of errors filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Pa. R.A.P. 1925(b). Additionally, Lomax disclaimed collateral estoppel below by asserting in his response to the City's motion for summary judgment that he was not relying on collateral estoppel but instead relying on substantial evidence to prove that a jury could find in his favor on both of his claims. (Apr. 4, 2019 Resp. to Mot. for Summ. J., ¶ 38; R.R. at 235a.)

Even if Lomax had not waived his collateral estoppel argument, it is without merit. Although the Commission considered the testimony of Lomax and several City employees in determining that the City failed to establish just cause,[4] the Commission concluded that the report and photographs were inadmissible. Consequently, the Commission never rendered a determination as to the truth or falsity of the statements in the report. Such a determination would be crucial to deciding whether the report had defamatory character, one of the elements necessary to establish defamation. *Kelley v. Pittman*, 150 A.3d 59, 67 (Pa. Super. 2016). Accordingly, the issues decided are not identical and the elements of collateral estoppel would not have been satisfied.

---

[4] In order to establish just cause, which is not defined, Pennsylvania courts have held that "the cause should be personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service." *City of Phila. v. Civ. Serv. Comm'n*, 965 A.2d 389, 393-94 (Pa. Cmwlth. 2009).

# III

Lomax next argues that the trial court erred in granting the nonsuit due, in large part, to its pre-trial order granting Davis's motion *in limine* thereby precluding him from presenting his case before a jury. In the motion, Davis sought to preclude Lomax from introducing exhibits related to his resignation, Commission proceedings, his reinstatement to City employment, Department of Revenue job descriptions, the OIG's website, unrelated OIG reports, and his work performance. She alleged that these exhibits and any testimony related thereto were irrelevant to the facts at issue, would unfairly prejudice her, could mislead and/or confuse the jury, could muddy the relevant issues, and would waste time. (Davis's Mot. *in Limine* at 1; R.R. at 1143a.) The trial court concluded that the evidence at issue was unrelated to the central question of whether Davis had published a communication of a defamatory nature concerning Lomax. (July 23, 2020 Trial Ct. Op. at 27; R.R. at 1456a.)

As the trial court determined, there is no indication that Lomax's proffered evidence would have established that Davis wrote, or otherwise published, the report. What Lomax sought to admit, at best, was tangential evidence. Accordingly, the trial court did not abuse its discretion in granting Davis's motion *in limine*.[5]

---

[5] Questions as to the admissibility of evidence lie within the sound discretion of the trial court. *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014). An abuse of discretion occurs where there is manifest unreasonableness, partiality, prejudice, bias, ill will, or such lack of support that the ruling is clearly erroneous, not where an appellate court would have reached a different result. *Id.* In other words, an erroneous evidentiary ruling does not warrant a new trial unless it was harmful or prejudicial to the complaining party. *Stumpf v. Nye*, 950 A.2d 1032, 1035-36 (Pa. Super. 2008). Accordingly, absent an abuse of discretion, an appellate court should not reverse such rulings. *Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999).

Moreover, what Lomax sought to admit at the time of trial, the Commission's decision and the trial court's opinion affirming that decision, would similarly not have established that Davis authored or published the report. The Commission in its decision pertaining to just cause did not determine that Davis authored the report. Instead, it summarized Davis's testimony about supervising Lomax.[6] Additionally, the trial court in its decision affirming the Commission stated only that Davis did not personally witness any misconduct at the Mail Center. (June 25, 2018 Trial Ct. Op. at 8; R.R. at 887a.) Accordingly, neither the Commission's decision nor the trial court's opinion indicated and/or pointed to any evidence that Davis wrote or published the report.

As the trial court stated at the outset of the trial, the matter at hand is an action claiming that the report was defamatory and "the only thing relevant is facts that go to prove that Miss Davis made the defamatory statement about [] Mr.

---

[6] Davis testified that she supervised Lomax from 2010 to 2015 and then from February to May 2016. Regarding Lomax's supervision of the Mail Center:

> [She] testified that she discussed with [him] the need to be at the [M]ail [C]enter on a daily basis, particularly in the morning to ensure employees were reporting to work on time. [She] relied on [him] to be her eyes and ears . . . and he never reported any misconduct to her. She visited the [M]ail [C]enter several times a week and if she did not see [him] there, she would contact him on his cell phone.
>
> . . . .
>
> Davis further testified that it was her belief that [Lomax] would have been aware of the behavior at the [M]ail [C]enter if he was present on a regular basis, and she did not feel he was an effective manager. . . . [Lomax] would have proceeded through the disciplinary process had he not resigned.

(Sept. 15, 2017, Comm'n Op. at 2-3; R.R. at 65a-66a.)

Lomax."[7] (Aug. 20, 2019 Trial, N.T. at 4; R.R. at 1189a.) However, Lomax was unable to prove his defamation case at Davis's trial. Although the trial court repeatedly questioned Lomax's counsel as to what questions counsel had for the witnesses that would establish that Davis wrote the report, counsel persistently sought to argue the falsity of the allegations in the report and to bring in character witnesses to testify on Lomax's behalf. The trial court reminded counsel that the crux of the case was whether Davis defamed Lomax, which requires publication. However, all three OIG witnesses testified at trial that they had interviewed Davis but that she did not participate in drafting the report and did not review it before publication. (Aug. 20, 2019 Trial, N.T. at 92-94, 97-99, and 101; R.R. at 1211a-14a.) Additionally, Davis testified that she was not involved in writing the report. (N.T. at 103; R.R. at 1214a.)

In declining to grant Lomax relief, the trial court held that he "cannot blame the trial court for the boundaries set by his own complaint,"[8] meaning that he could not, at trial, expand his cause of action or theory of the case beyond the defamation and false light claims he pled in his complaint. In other words, Lomax's complaint alleged that Davis made defamatory statements in the OIG report and that she participated in writing and drafting the report but Lomax presented no evidence to establish such claims against Davis. Accordingly, because "[a] judgment of non-suit is properly entered if a plaintiff has not introduced sufficient evidence to

---

[7] In order to establish the elements necessary for a defamation action, Lomax had to prove: 1) that the report had defamatory character; 2) that Davis published it to a third party; 3) that the report referred to Lomax; 4) that any recipients would understand it as defaming Lomax; 5) that it caused special harm to Lomax; and 6) that if the communication was privileged, Davis abused the conditional privilege of the communication. *Kelley*, 150 A.3d at 67.

[8] (July 23, 2020 Trial Ct. Op. at 10; R.R. at 1439a.)

11

establish the elements necessary to maintain an action[,]"[9] the trial court did not err in granting the compulsory nonsuit.

For the above reasons, therefore, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[9] *Kramer v. Port Auth. of Allegheny Cnty.*, 876 A.2d 487, 493 (Pa. Cmwlth. 2005).

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean Lomax,
              Appellant

         v.

Alex DeSantis, in his personal capacity, City of Philadelphia Office of the Inspector General and Nicole Harrington, in her personal capacity, City of Philadelphia Office of the Inspector General and Anthony Erace, in his personal capacity, City of Philadelphia Office of the Inspector General and Delores Davis, in her personal capacity, City of Philadelphia Department of Revenue

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 121 C.D. 2020

# **O R D E R**

AND NOW, this 13th day of May, 2021, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita