J-A07035-21

2021 PA Super 110

| | | |
|---|---|---|
| B.S.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.M.C. | : | No. 2000 EDA 2020 |

Appeal from the Order Entered September 21, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): No. 0C1406109

BEFORE: BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: Filed: May 27, 2021

Appellant, B.S.G. ("Father") appeals from the order entered in the Court of Common Pleas of Philadelphia County that denied his petitions for contempt against D.M.C. ("Mother") and for primary physical custody of the parties' 10-year-old daughter ("Child") and, instead, continued the parties' shared legal and physical custody arrangement, albeit with some modification.

Herein, Father contends that, as a matter of law, a shared legal custody arrangement precludes a court from assigning to one parent ultimate decision-making authority on certain aspects of a child's life, as was done in the instant case, and he asserts the court abused its discretion when it weighed the evidence in favor of Mother on the majority of custodial factors enumerated in 23 Pa.C.S. § 5328(a). We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The lower court sets forth relevant facts and procedural history, as follows:

> [Father] appeals the custody order entered by [the] court on September 21, 2020, that awarded shared legal and physical custody of the minor child born on December 3, 2011 ("Child") to Father and [Mother].
>
> . . .
>
> In a prior custody proceeding, the Honorable Maria McLaughlin entered a custody order on August 3, 2015, which awarded shared physical and legal custody of the Child to Mother and Father. In addition to setting forth custodial schedules and transportation responsibilities, the 2015 custody order required the Child to remain at a specific daycare center until further order of the Court.
>
> In 2017, Father filed two petitions to modify custody, two petitions for contempt and a motion for expedited relief on August 30, 2017 and granted a protracted (full-day) hearing for the remaining outstanding petitions. Mother file a petition to modify custody in February 2018, and a protracted custody hearing date for all outstanding matters was eventually scheduled for May 10, 2019.
>
> [The lower] court began the protracted hearing using a video conference platform on that date. At the end of the day, that hearing was bifurcated and [the] court entered a temporary order that modified the 2015 custody order. [The] court also scheduled a second protracted hearing date for all outstanding petitions on August 10, 2020, which by that time, included three petitions for modification and three petitions for contempt. The custody trial resumed and was completed on September 9, 2020. [The] court held its decision under advisement to review the lengthy record before entering a decision.
>
> The evidence showed that both parents love their Child, both are capable of taking care of her, and that neither parent has subjected the Child to abuse, neglect, substance abuse, or mental illness. Neither parent has convictions for enumerated offenses pursuant to 23 Pa.C.S. § 5329. [The court describes the present case as] essentially a high-conflict dispute between two parents who rarely communicate when they are not in court and cannot

agree about educational or medical decisions or a physical custody schedule. The custody order at issue on appeal was then entered on September 21, 2020.

[The September 21, 2020] custody order awarded shared legal and physical custody of the Child to Mother and Father [and assigned to each parent: [1]

> an affirmative responsibility to consult with each other on a continuous and regular basis with respect to all significant aspects of the child's life, including but not limited to medical, educational, legal and religious decisions.

> Each parent shall be informed of, or is entitled to participate in and attend the Child's special activities, including but not limited to religious activities, school programs, sports, school parent meetings, extracurricular activities, regardless of whose custodial day they fall on and each parent shall avail themselves on their own to receive information pertaining to all of those activities.

Order, 9/21/20, at 1.]

Because [the court determined] during trial that the [parties have demonstrated a "high-conflict nature" to their relationship that] makes them incapable of co-parenting the Child in several significant respects, the order provides certain limitations to both Mother['s] and Father's shared legal custody. Specifically, Mother retains exclusive authority to decide which school the Child attends. [With respect to choice of school, the order directs:

> If the Child is accepted into Philadelphia Academy Charter school ("PACS") [which both parents have agreed is an acceptable school choice, *see infra*], the child will attend PACS unless and until the parties agree to enroll her in a different school. If the child is not accepted into PACS and

---

[1] We have supplemented the learned court's discussion of pertinent facts and procedural history with excerpts from its Order of September 21, 2020, as they provide helpful detail regarding the extent of the parties' respective rights and responsibilities under the existing order. Excerpts appear in indented portions within the block quote.

- 3 -

the parties are not able to agree on a school, Mother shall have the authority to decide which school the child attends.

Order at 2.]

Further, Mother has authority to choose the Child's pediatrician and therapist while Father has authority to choose the Child's dentist[:

The Child shall not have two different pediatricians or dentists. Mother shall choose the child's pediatrician. Father shall choose the child's dentist. The dentist is not required to be a pediatric dentist.

Mother may choose the Child's therapist. Both parties are to fully cooperate with respect to the child's therapy sessions. The parties will ensure that Child attends all scheduled appointments and the parties shall communicate with and meet with the therapist, at the therapist's requests and in any manner recommended by the therapist, in order to properly treat the child. Any and all out of pocket expenses regarding the child's therapy shall be shared equally between the parties and shall be due at the time that the services are rendered. Both parties will sign any and all documents required by the therapist for any and all treatment. Neither party may withdraw their consent for treatment of the child. Both parties shall share the responsibility of getting the child to and from therapy, at frequency required by the therapist. Each parent shall ensure that the child has privacy when talking to the therapist during any online therapy session.]

Order at 3.]

Regarding shared physical custody, the parties take turns having physical custody of the Child every other weekend. Mother has physical custody of the Child every Monday through Wednesday [morning], and Father has physical custody of the Child every Wednesday [morning] through Friday[:

Physical custody of the child will be as follows: The parties will share physical custody of the child on the following schedule.

Mother shall have physical custody of the Child every Monday at 10:00 a.m. through Wednesday at 10:00 a.m. All pickups and drop-offs will occur at school, camp, daycare or [sic] at 10:00 a.m.

Father shall have physical custody of the Child every Wednesday at 10:00 a.m. through Friday at 10:00 a.m. and every other weekend from Friday to Monday at 10:00 a.m.

. . .

Mother may enroll the Child in summer day camp during her periods of partial custody. Father must pick up and drop off the child at the day camp if it coincides with the child's camp day.

. . .

The parties are to exchange email addresses and communicate with respect to custody issues only via email. The parties are to exchange emails pertaining to extracurricular activities, daycare/school, and doctor's appointments.

Parties are to share equally in all of the transportation with both parties ensuring that the Child is taken to and picked up from daycare/school or the appropriate household if there is no daycare/school.

Order, at 2, 3. Additionally, the order includes a detailed holiday schedule [a first for the parties], and transportation of the Child is shared equally between the parties. This physical custody schedule provided Father with more physical custody time than the 2015 custody order.

Trial Court Opinion, 9/21/20, at 1-4.

Father raises the following issues for our consideration:

1. Did the trial court err or abuse its discretion when it awarded Mother the right to make decisions about where the child would attend school if there was a dispute between the parties?

- 5 -

2. Did the trial court err or abuse its discretion in failing to grant the parties reasonable contact with the minor child, while the minor child is in custody of the other party?

3. Did the trial court err or abuse its discretion in failing to award primary physical custody to Father?

4. Did the trial court err in failing to find custodial factors in favor of Father?

Brief of Appellant, at 3.

Regarding custody matters, our scope and standard of review are as follows:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses firsthand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court.

***E.D. v. M.P.,*** 33 A.3d 73, 76 (Pa. Super. 2011) (quoting ***A.D. v. M.A.B.,*** 989

A.2d 32, 35–36 (Pa. Super. 2010)). Furthermore, we note that:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

> ***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006)
> (quoting ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super.
> 2004)).

***A.H. v. C.M.***, 58 A.3d 823, 825 (Pa. Super. 2012).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being. ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006). (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)).

In his first issue, Father argues that the court's order giving exclusive power to Mother to choose Child's school, pediatrician, and therapist, and to Father to choose Child's dentist, contravenes this Court's precedent prohibiting the conferral of exclusive decision-making power to one parent where there exists shared legal custody. Specifically, Father cites ***Hill v. Hill***, 619 A.2d 1086 (Pa. Super. 1993) (*superseded on other grounds by statute*, Act of Dec. 18, 2013, P.L. 1167, No. 107, § 1 (amending 23 Pa.C.S. § 5328)) for the proposition that, in shared legal custody, a court may not give one parent power to override parental disagreements without undoing the shared custody construct.

The ***Hill*** case concerned a situation in which the court's order awarded parents shared legal custody, but "[i]n the event of disagreement, [m]other's preference [would] prevail." ***Id.*** at 1088. On appeal, this Court held that the trial court had given "the father authority in name only and deprived him of a legal remedy because he was already awarded 'shared legal custody.'" ***Id***.

We further stated that "the concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute." *Id.* at 1089 (relying on *In re Wesley J.K.*, 445 A.2d 1243 (Pa. Super. 1982)).

On the question of whether a court may confer sole authority to one parent in limited situations without undermining shared custody, it is salient to recognize that *Hill* is factually distinguishable from the present matter. Whereas *Hill* involved an order granting to the mother exclusive power to decide literally every potential disagreement between the parties, which, this Court concluded, effectively nullified the existing shared legal custody arrangement, the order in the case *sub judice* limits the grant of sole authority to four discrete, albeit important, decisions necessary to surmount impasse on the selection of Child's school, pediatrician, therapist, and dentist, and it gives each parent sole authority over at least one decision.

Critically, therefore, the order before us does not extend unilateral power beyond these several initial selections, thus making the parties' future decisions implicating Child's interests within the broader educational, medical, psychotherapeutic, and dental contexts subject to the collaborative decision-making process typically required of both parents who share legal custody.[2]

_____

[2] We note that the trial court provides in its Pa.R.A.P. 1925(a) opinion ("TCO") a rationale for its school choice ruling that could be read to diverge from the September 21, 2020 order's limited grant of exclusive power in Mother to select a school. Specifically, the opinion states, "this court found that it is in
*(Footnote Continued Next Page)*

Thus, we disagree with Father's position that **Hill** altogether forecloses a court's exercise of discretion to give final decision-making power to one parent over certain limited choices to be made in a Child's life where, as here, the record establishes parents have effectively reached impasse on such matters. The best interests of the child may require that such choices be made more expeditiously than through repeated petitioning of the courts, and there will be instances where a court may preserve the essence of a shared custody arrangement while selecting as the final arbiter a parent who has exhibited good faith and acceptable judgment on the issue. Accordingly, we conclude that the shared legal custody rubric in the case *sub judice* remains in effect under the court's September 21, 2020 custody order and deem meritless Father's argument to the contrary.[3]

_____

the Child's best interests for Mother to have sole legal authority over the Child's *education*." TCO, at 7 (emphasis added). The court goes on to opine that Mother demonstrated a better record than did Father of prioritizing Child's educational best-interests in several relevant ways, including on the issue of selecting a school. *Id.* at 7-8. While we find support in the record for the court's opinions in this regard and, thus, dismiss as meritless Father's arguments to the contrary, we clarify that the order itself limits Mother's exclusive authority in the educational setting to deciding which school Child shall attend.

[3] Father argues additionally that Mother and he had not reached impasse on the task of selecting Child's school, citing, for example, that they had previously agreed to enroll Child in St. Catherine of Siena parochial school in Philadelphia. However, shortly after their agreement, Father withdrew his assent, citing his inability to afford the tuition. Appellant also testified that he was not opposed to PACS as a school, it was just that he held concerns that the travel time from Levittown to the Roosevelt Boulevard location of the school was not in Child's best interest. Notably, Child's travel time to Father's

*(Footnote Continued Next Page)*

In Father's second issue, he posits the court abused its discretion by failing to order that the custodial parent ensure the availability of communications between Child and the non-custodial parent. In response, the court opines that such a provision was unnecessary because the record did not reveal any effort by either party to prevent such communications. Father, however, argues that he "believes that Mother turns . . . off [Child's cell phone that he provided to her when she was six years old] purposely to obfuscate his contact with the child." Appellant's brief, at 16. Father also points to evidence that his emails to Mother during her custodial time have gone unanswered. Mother, for her part, denied that she ever interfered with Father's ability to contact Child. N.T., 8/10/20, at 204-215.

Father fails to develop this legal argument with any further discussion supported by reference to the record and citation to authority. It is beyond cavil that, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011); *see also* Pa.R.A.P. 2119(a) (argument section of appellate brief shall contain discussion of issues raised therein and

_____

first-choice school, People for People Charter School in North Philadelphia was roughly equivalent, and, in any event, Mother opposed PFPCS primarily because of its low scholastic ratings. Given the protracted inability of the parties to settle on a long-term school for Child, therefore, the court appropriately made the finding of fact that parents were at impasse on the task of selecting a school.

citation to pertinent legal authorities). We, therefore, find Father's second issue waived.

Even if we were to address Father's issue on its merits, it is evident that his challenge goes strictly to the weight that the court attached to certain factual testimonies of the parties, and to the trial court's credibility determinations. While Father would have preferred for the trial court to have placed more weight on testimony favoring him, we have explained that, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012); *see also M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (stating, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."). For this reason, Father's second issue fails.

Finally, Appellant combines his third and fourth issues to maintain that the court erred in failing to award him primary physical custody which an appropriate analysis of the Section 5328(a) custody factors clearly warrants. Father contends that the trial court's order, while offering conclusions with respect to each enumerated factor that the evidence either favored Mother or favored neither party, failed to provide reasons or analysis in support of these conclusions.

Father likewise assails the court's subsequent Pa.R.A.P. 1925(a) opinion in which it explained that its credibility determinations where the parties'

testimonies conflicted favored Mother and that it additionally found Mother demonstrated superior ability to meet child's educational, developmental, and emotional needs. According to Father, the court's conclusions in this regard are inconsistent with the evidence of record. He, therefore, asks that we vacate the present order and remand for further proceedings from which the trial judge shall first recuse himself.

"When a trial court orders a form of custody, the best interest of the child is paramount." **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014) (citing **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa. Super. 2011) ). A non-exclusive list of factors a court should consider when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Section 5323(d), moreover, requires the trial court to set forth its mandatory assessment of the custody factors prior to the deadline by which a

litigant must file a notice of appeal. *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (citation omitted). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id.* (citation omitted). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id*.

Essentially, Father challenges the court's preservation of the parties' shared physical custody arrangement as contrary to Child's best interests. Father devotes the majority of his argument in this regard to opposing the court order's plain findings on the following factors: factor (1), that neither party was more likely to encourage and permit contact between the child and the other party; factor (3), that Mother better performed parental duties on behalf of the child; factor (4), that Mother provided more stability and continuity with respect to Child's educational and medical needs; factor (5), that neither party demonstrated superior availability of extended family; factor (7), that neither parent was favored after consideration of the well-reasoned preference of the child, if any; factor (9), that neither party was more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs; factor (10) that Mother was more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child; factor (12), that neither party was more available to care for the child or more able to make

appropriate child-care arrangements; and, factor (13) that Mother demonstrated a more favorable record regarding the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. In each instance, Father argues that the factor in question should have been found in his favor.

We conclude that Father is not entitled to relief on these factors, as the court's decision on each was based on credibility determinations that have support in the record. In summarizing its review of the factors that led it to enter an order retaining the present shared physical custody arrangement, the court reasoned:

> the evidence in this case showed that both parents provide loving, nurturing, and stable homes, and that the Child is thriving under the prior custody order that awarded shared physical custody. There was no reason at all to disrupt the shared physical custody schedule and increase Father's physical custody time to the extent that he would have had primary physical custody. Doing so would have been destabilizing for the Child and would have deprived her of more time with a parent who has been performing many parental duties extremely well.

TCO at 9.[4]

---

[4] Consonant with these overarching findings of fact and inferences supporting the continuation of shared physical custody, the court specifically found in its order that neither parent was favored under factors (5), (7), (9), and (12), which focus, respectively, on the availability of extended family, any well-reasoned preference of the child, the likelihood of each parent to maintain a loving, stable, nurturing relationship adequate for Child's emotional needs, and the ability to care for Child or make child-care arrangements. In response to Father's claims that such factors clearly favor him, the court's opinion again acknowledges that "Father is able to attend to the Child's daily physical, emotional, developmental, educational and special needs," but it nonetheless
*(Footnote Continued Next Page)*

More specifically with respect to each disputed factor, we note that in factor (1), which the court concluded favored neither party, Father emphasizes that he provided Child with a cell phone when she was six years old and, therefore, stood in a superior position as promoting Child's communication with the non-custodial parent. The court found credible Mother's testimony, however, that she has neither limited Child's use of the cell phone to communicate with Father during Mother's custodial time nor impeded in any way Child's contact with Father over the previous four years. N.T. at 204-215. Thus, we find no abuse of discretion with the court's conclusion that factor (1) favors neither party.

Similarly with regard to factors (3), (4), and (10), which the court found to favor Mother, the relevant evidence included Mother's testimony that Father did not enforce reasonable bed times, N.T. at 221, continually permitted Child to sleep in his bed, *Id.*, allowed her to watch movies and videos with inappropriately scary content that caused her distress,[5] N.T. at 197, 207, had other children at his home for play dates on two separate occasions while Child

continues that "Mother was better able to meet those needs for the Child" such that "no relief is due" on Father's claim. *Id.* at 12-13. Where the record also supports that both parties benefitted from loving, supportive extended families who were regularly part of Child's homelife, we find no abuse of discretion with the court's order electing to find neither parent enjoyed favored status for factors (5), (7), (9), and (12).

[5] Father admitted he allowed Child unrestricted access to the internet on her cell phone, testifying he has "100 percent confidence in her not to look at any of that bad stuff." N.T., 8/10/20, at 93. She was between the ages of 6 to 8 years old at the time in question.

was attending virtual therapy sessions from home, N.T. at 134-138, and habitually failed to keep Child current on her homework, which required Mother to work with Child to make up the deficit. N.T. at 177-183. Mother substantiated claims of Child's late hours with Father through an exhibit of time stamps on Child's text messaging records during her stays with Father. N.T. at 208.

Other evidence that Father's decisions affected Child's sense of stability within her social and educational settings included Father's refusal to bring Child to kindergarten on his two weekdays of custody, saying Child was attending "Daddy School" on such days because he had "decided that she could still benefit from learning from home just as good with kindergarten." N.T. 8/10/20, at 104-105. Similarly, Father occasionally acted in defiance of the court's 2019 order that he was to bring Child to day camp with her peer group at "Adventure Land" on "Friday Fun Day"—Child's favorite camp day— again saying Child was attending "Daddy Camp" on such days. N.T. at 105-107, 193-95. According to Father, kindergarten and summertime day-camp were mainly sources of day care that were unnecessary on his custody days. N.T. at 104-108. Under this record, we perceive no abuse of discretion with the court's decision to favor Mother on factors (3), (4), and (10).

With respect to factor (13) and its inquiry into the promotion of conflict between the parties, Mother offered evidence that Father caused Child to be denied entry to Mill Creek Elementary on her first day of first grade because Father falsely informed the school that Mother and Child resided in

Philadelphia with Mother's boyfriend rather than in the Bucks County school district with Mother's parents. Consequently, Mother and Child underwent a school investigation into their residential status before the school officially enrolled Child midway through the second day of school, causing Child to become very upset. N.T. at 165-168.

In another segment of Mother's testimony, she described how Father would occasionally call Child on his non-custodial weekends to tell her how much fun he and his extended family, including young cousins, were having at a barbeque or similar type of event and how they all wished she were there, which would inevitably cause Child to cry and beg Mother to take Child to Father's house. Father would also have Child call Mother on the final day of his custody time to ask her if she could extend her time with Father. N.T. at 130, 184-88. Mother testified that, in contrast, she did not act in kind on the many days where Child would ask to remain with her when it was Father's Day to pick up Child. *Id*. Again, the court found Mother's testimony credible with respect to these factor (13) considerations.

On balance, Mother's testimony, which, as indicated in the September 21, 2020 Order, the court found to be credible and persuasive, served as sufficient grounds for the trial court's Section 5328 factors factual findings. As the record supports such factual findings, we find the court's legal conclusions that the statutory factors favored either Mother or no party were not unreasonable. Therefore, we conclude Father's third and fourth issues afford him no relief.

For the foregoing reasons, we discern no error with the court's order denying Father's petition for primary physical custody, as it was within the court's reasonable exercise of discretion to conclude that preserving the parties' shared legal and physical custody arrangement was in Child's best interests.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/21