**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THOMAS M. GILRONAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMY L. ZANELLI | : | |
| | : | |
| Appellant | : | No. 133 EDA 2024 |

Appeal from the Order Entered November 27, 2023
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-48-CV-2014-03733

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:           **FILED MAY 23, 2024**

Amy L. Zanelli ("Mother") challenges the November 27, 2023 order that denied her petition to modify custody of her child, L.G.G.-Z., and maintained the status quo by continuing Mother's shared legal and physical custody with Thomas Gilronan ("Father"). We affirm.

L.G.G.-Z. was born in June 2011 and the parties' custody litigation began in April 2014. In 2018, the parties shared legal custody and split physical custody on a weekly basis in the summer, and divided the week during the school year. Specifically, the parents alternated weekends and L.G.G.-Z. remained with Father from Monday to Wednesday and with Mother from Wednesday to Friday. On September 18, 2020, Mother filed a petition to modify custody so that the summer schedule would apply to the school

_____

[*] Retired Senior Judge assigned to the Superior Court.

year. In Father's answer, he complained that Mother had enrolled L.G.G.-Z. in activities without his consent and to the detriment of her schoolwork, and alleged contempt for same, as well as for discussing custody matters with L.G.G.-Z. and not ensuring Father had his phone calls during Mother's custodial periods. The court granted Mother's petition and instituted directives to alleviate Father's concerns.

On May 1, 2023, Mother filed the underlying petition seeking primary physical custody during the school year, with Father receiving partial physical custody on alternating weekends. The court interviewed then-twelve-year-old L.G.G.-Z. and heard testimony from Mother, Father, and Father's wife of eight years, Jessica Gilronan. After weighing the factors set forth in 23 Pa.C.S. § 5328(a), the court determined that modification was unwarranted and denied Mother's petition. Simultaneously, it amended the prior order regarding communication between the parties and further directed that Father and L.G.G.-Z. jointly attend counseling.

This timely filed notice of appeal followed. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Mother presents two issues for our consideration:

1. Whether the trial court committed an error of law and/or an abuse of discretion when it failed to consider the testimony of the minor child and her well-reasoned preference for an alteration in the custody schedule, and denied Mother's request for a modification of the custody order.

2. Whether the trial court committed an error of law and/or abused its discretion when it failed to modify the custody order

- 2 -

and award Mother primary physical custody in the face of clear evidence that Mother's home was better suited to accommodate the minor child's emotional and educational needs.

Mother's brief at 6 (capitalization altered).

We review custody matters pursuant to our well-settled standard and scope of review:

> Our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses firsthand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court.

***B.S.G. v. D.M.C.***, 255 A.3d 528, 533 (Pa.Super. 2021) (cleaned up). This Court's deferential review recognizes that "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." ***Id***. (cleaned up). Finally, "[t]he primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being." ***Id***. (cleaned up).

Section 5328(a) provides the following, non-exhaustive list of factors that a court should consider before making custody determinations:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in [§] 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's

effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

On appeal, Mother argues that the court erred in not granting enough weight to L.G.G.-Z.'s preference that custody be modified or the factor relating to the stability of Mother's home, which she contends should have tipped the balance in her favor and resulted in modification of the custody schedule. *See* Mother's brief 15-19. Specifically, she avers that the court "failed to consider the testimony of [L.G.G.-Z.] and her well-reasoned preference for residing primarily in Mother's home" due, in part, to "problems and issues she had experienced during her custodial time in Father's home[.]" *Id*. at 11. Citing this Court's decision in *Wheeler v. Mazur*, 793 A.2d 929 (Pa.Super. 2002), Mother contends that, all other factors being equal, the court was obligated to tip the scales in her favor when L.G.G.-Z. stated a clear preference to be with her. *See* Mother's brief at 16-17. In sum, she believes the court's best interest analysis was flawed. *Id*. at 20.

In *Wheeler*, this Court addressed the weight to be given to a child's preference thusly:

The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons

given for the preference.  Moreover, as children grow older, more weight must be given to the preference of the child.  As this Court has recently reaffirmed, where the households of both parents were equally suitable, a child's preference to live with one parent could not but tip the evidentiary scale in favor of that parent.

*Wheeler*, 793 A.2d at 937–38 (cleaned up).[1]

Here, the trial court thoroughly examined the § 5328(a) factors, finding most of them neutral or inapplicable.  Specifically, it found that both Mother and Father provide appropriate supervision, are actively involved in performing their parental duties, have extended family available, live in close proximity, arrange for necessary childcare, and deeply love L.G.G.-Z., all "[d]espite the parties' inability to successfully co-parent with one another[.]" Trial Court Opinion 11/27/23, at 23-27, 29.  However, it also determined that factor eight did not favor Mother or Father because "the acrimony between the parties has exposed [L.G.G.-Z.] to a number of inappropriate circumstances," and "[w]hether the parties acknowledge it or not, they are both turning their [c]hild against the other parent." *Id*. at 28-29.  Similarly, the court held that neither party promoted L.G.G.-Z.'s relationship with the other parent and they "equally contribute to the level of conflict that exists between them[.]" *Id*. at 22-23, 31.

Regarding the factors that the court weighed in favor of only one parent, it found factor four favored Mother "given the calm and predictable

---

[1] We note that our decision in *Wheeler* predated the legislature's adoption of the current Child Custody Act, which, as discussed earlier in this memorandum, sets forth the relevant factors for a court to consider before modifying custody, including the preference of the child.

environment of her household and the close proximity of her house to [L.G.G.-Z.]'s school and ballet." *Id*. at 26. Additionally, it weighed L.G.G.-Z.'s preference to be with Mother in Mother's favor. *Id*. at 27-28. However, it weighed factor six in favor of Father given L.G.G.-Z.'s then-seven-year-old half-sister, with whom she has a close relationship, and her two older step-siblings. *Id*. at 27.

Ultimately, the court determined that maintaining the status quo was in the best interests of L.G.G.-Z.:

> After considering the factors inherent in a best interest analysis, we determine that to grant Mother's request for modification would be to the [c]hild's detriment as we believe the [c]hild should have equal access to both parents because Mother and Father are both loving and devoted to [L.G.G.-Z.] The parties have shared physical custody of the [c]hild on a roughly 50/50 basis throughout [her] life, and despite the seemingly chaotic nature of Father's household, [L.G.G.-Z.] is clearly well adjusted and currently thriving in the educational and community aspects of her life under the present custodial arrangement. With the aid of both parties working hard to meet [her] needs and attend to her various obligations, [L.G.G.-Z.] has continued to flourish and participate in programs that she enjoys.
>
> [L.G.G.-Z.] provided articulate and intelligent testimony regarding her stated preference for Mother's house, however, we ultimately find that both parents are interested and actively involved in the [c]hild's activities and have been offering appropriate physical and emotional care for [her]. We therefore find that a disturbance to the current custody arrangement would unnecessarily and unwarrantedly cause disruption in the [c]hild's life and in her relationship with Father and her half-sibling who lives in Father's household. While the custodial schedule will remain the same, we believe that with certain additions to the court order, the parties will be able to cooperate such that [L.G.G.-Z.] may enjoy the benefit of both households.

Trial Court Opinion, 11/27/23, at 32.

The testimony elicited at the custody hearing supports the court's findings. It is apparent from our review of the certified record that the trial court considered L.G.G.-Z.'s testimony regarding her preference and the stability at Mother's home, and weighed both of those factors in Mother's favor. However, in considering all of the §5328(a) factors together, the court determined that maintaining the current routine, with some modifications, was in her best interests. That the court did not weigh these factors as much as Mother would have liked does not equate to error.

While there were differences in the parents' home environments, that was to be expected since Mother lives alone, whereas Father lives with his wife, their daughter, and his step-son, who has been diagnosed with various behavioral issues.[2] Nonetheless, both parents clearly care for L.G.G.-Z., attend to her needs, provide a safe home environment, and are actively involved in her life. In ascertaining the appropriate weight to ascribe to L.G.G.-Z.'s preference, the court noted:

> [W]e question the possibility that [her] testimony might have been swayed by certain luxuries she is able to experience while at Mother's house as compared to Father's house. [L.G.G.-Z.] presented to th[e c]ourt as mature beyond her years, however, a twelve-year-old should not be free to dictate her own custodial schedule when she has two loving and capable parents.

---

[2] His step-daughter, who had previously suffered from some mental health issues, now lives on campus at college.

*Id*. at 28. We discern no abuse of discretion in the court's analysis and conclusion. Accordingly, we do not disturb its determination, and instead affirm the order denying Mother's petition for modification of custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/23/2024