J-A16021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| HEIDI MARLENI DAVILA JIMENEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VALENTIN GEORGE IONESCU | : | |
| | : | |
| Appellant | : | No. 3373 EDA 2024 |

Appeal from the Order Entered October 16, 2024
In the Court of Common Pleas of Northampton County Civil Division at
No(s): DR-0031621

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:     **FILED SEPTEMBER 26, 2025**

Valentin George Ionescu (Father) appeals *pro se* from the order entered by the Northampton County Court of Common Pleas which found him in willful contempt and ordered him to serve sixty days in the county jail. The order provided Father the ability to purge the contempt charge by paying $500, signing Internal Revenue Service (IRS) forms, and providing the tax identification number and address for the business, Taurus Star Construction. After review, we affirm.

We discern the following factual and procedural history from the trial court's opinion. This case has a lengthy procedural history, with many orders entered by several different judges. The underlying matter in this case is a domestic relations matter for child support of Father's three sons with Heidi Marleni Davila Jimenez (Mother): D.I. (age 16), J.I. (age 14), and K.I. (age 11).

In December 2023, Mother's counsel presented a motion for discovery based on Father's admission during a support conference that he had an interest in Taurus Star Construction. Father refused to produce the business's tax returns. Mother also believed that Father potentially requested a decrease in, or termination of, his overtime hours to reduce his child support obligation. The Honorable Jennifer R. Sletvold granted the motion. The resulting December 14, 2023 discovery order directed Father to provide federal tax returns with schedules for Taurus Star Construction for the calendar years of 2016 to the present. The order also permitted Mother to serve a subpoena on Father's employer for a deposition. Father continuously opposed the ordered discovery.

On July 17, 2024, in response to Mother's petition for special relief, The Honorable Paula A. Roscioli entered an order directing Father to obtain from the IRS either (1) full and complete returns including schedules or (2) verification of non-filing for the years 2022 and 2023 and provide copies to Mother's counsel within fifteen days.

On July 29, 2024, after a hearing on Mother's petition for contempt, Judge Sletvold entered an order granting Mother's petition. Father was ordered to execute all authorizations as required by the IRS to obtain the tax returns/transcripts for Taurus Star Construction for 2016 to the present with all schedules. Father was also directed to pay $1,000 in counsel fees.

On October 2, 2024, Judge Sletvold held a hearing on two motions filed by Father and a Petition for Contempt filed by Mother, which resulted in three

orders entered on October 3, 2024. The first order was related to Father's Motion to Suppress Evidence and Vacate Judgment, which was denied. The second order was related to Father's Motion for Recusal, which was denied. The third order was related to Mother's Petition for Contempt, which was granted. Father was ordered to pay $2,000 in counsel fees ($1,000 for each of two petitions for contempt filed by Mother), with a penalty for late payment. Father was ordered again to provide, within fourteen days, correct and fully executed IRS forms to obtain the tax returns/transcripts for Taurus Star Construction for the years 2016 to the present with all schedules, or sign the IRS forms provided by Mother's counsel. The court scheduled a hearing for October 16, 2024 to make a record of Father's compliance with all court orders. And, in the event of non-compliance, contempt sanctions would be imposed. The order further directed that if Father was not in compliance, Mother's counsel should be prepared to make a record via an appropriate witness as to what IRS forms would be appropriate to use in this matter.

At the October 16, 2024 hearing, Mother presented the testimony of an expert witness related to which IRS forms Father needed to execute for Mother's counsel to obtain the tax returns. The trial court afforded Father several opportunities to comply with its orders. The court also appointed counsel for Father, at his request. Although Father ultimately signed the IRS forms, he altered them, thus rendering them ineffective.

Accordingly, the trial court found that there was no justifiable excuse and Father was in willful contempt and directed him to be imprisoned for sixty

days. He was permitted to purge himself of the contempt by paying $500, signing unaltered IRS forms, and providing the tax ID number and business address for Taurus Star Construction, which were needed for the forms.

On October 17, 2024, Father purged himself of the contempt. The $500 purge was to be credited towards the outstanding $2,000 in attorney's fees the court had previously awarded because of Father's contempt.

Father initially filed an appeal from the three orders entered on October 3, 2024. This Court entered a rule to show cause order noting that it was unclear if any of the three orders were final or otherwise appealable. **See** Order, 11/25/24.

Father's response to our rule to show cause acknowledged that after the October 3 order, a hearing was held on October 16 and the trial court imposed sanctions in a subsequent order. Father failed to respond as to the purported appealability of the other two interlocutory orders. Thus, we quashed his appeal. **See** Order, 12/13/24.

A week later, on December 20, 2024, Father filed the instant appeal from the October 16 order. Because the appeal was filed 65 days after the order was entered, Father's appeal is facially untimely, and we must first determine if it is properly before us. **See** Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after entry of the order from which the appeal is taken).

Mother and the trial court urge us to quash Father's appeal as being untimely. However, our review of the trial court docket reveals that although

- 4 -

the October 16, 2024 order was docketed, the trial court did not make a notation in the docket pursuant to Pennsylvania Rule of Civil Procedure 236(b) evincing that the October 16 order was sent to the parties. **See** Pa.R.C.P. 236(a)(2) ("The prothonotary shall immediately give written notice of the entry of any other order . . . to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order . . . ."); Pa.R.C.P. 236(b) ("The prothonotary shall note in the docket the giving of the notice . . . ."); Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b).").

Here, the docket entry contains the following information: Case ID, Plaintiff, Defendant, Filed By, Filer ID, Filing Date, Judge Name, Judge ID, and Docket Text. The docket text recites the language of the order but says nothing about when Rule 236 notice was given. Because the docket lacks the required Rule 236(b) notice, we decline to find Father's appeal untimely.[1] **See**

_____

[1] We acknowledge prior case law which has indicated that "when sanctions are imposed for failure to comply with a discovery order the order imposing sanctions is not reviewable until final disposition of the underlying litigation. This is so even though discovery sanctions are frequently imposed following a citation for civil contempt in an attempt to coerce compliance with the discovery order." **Fox v. Gabler**, 547 A.2d 399, 404 (Pa. Super. 1988) (citations omitted). Here, however, the underlying litigation is a child support matter. Although Father has another appeal listed separately before this panel at 2670 EDA 2024 in which he challenges the underlying support order, that order was entered in September 2024, before the contempt order was entered
*(Footnote Continued Next Page)*

*In re L.M.*, 923 A.2d 505, 509 (Pa. Super. 2007) ("Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run.") (citing *Frazier v. City of Philadelphia*, 557 Pa. 618, 621-22, 735 A.2d 113, 115 (1999)). *But cf. Murphy v. Murphy*, 988 A.2d 703, 709-710 (Pa. Super. 2010) ("The entry of a support order need not contain a Rule 236 docket entry that notice has been sent. . . . We also observe there are reasons for less stringent notice

_____

in October 2024. Thus, Father would have been unable to appeal the contempt order within his appeal of the final support order. Further, as far as we are aware, there is currently no ongoing support litigation in this matter, due to Father's other pending appeal. Therefore, we will consider the contempt order as a final order, and we will address the merits of Father's appeal.

The trial court also argues that Father's other issues related to the discovery order, his motion to suppress evidence, and his motion for recusal are untimely. However, we decline to find Father's issues untimely because we disagree that Father could have appealed those orders immediately. *See* Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties); *Kelley v. Pittman*, 150 A.3d 59, 64 (Pa. Super. 2016) ("Typically, discovery orders are not final, and are, therefore, unappealable.") (citation omitted); *Com. v. Strong*, 825 A.2d 658, 667 (Pa. Super. 2003) ("A pretrial order denying a defendant's motion to suppress evidence is interlocutory, and not appealable.") (citation omitted); *Krieg v. Krieg*, 743 A.2d 509 (Pa. Super. 1999) (motion for recusal is neither final nor collateral). Father has now appealed from the final order finding him in contempt and imposing sanctions, which was entered by Judge Sletvold. Judge Sletvold also entered the other challenged orders. Thus, in the interest of judicial economy and given that Father has also separately appealed the support order entered by a different judge in this matter, we will review the other interlocutory orders entered by Judge Sletvold within this appeal. *See Stephens v. Messick*, 799 A.2d 793, 798 (Pa. Super. 2002) ("As a general rule, interlocutory orders that are not subject to immediate appeal as of right may be reviewed on a subsequent timely appeal of the final appealable order or judgment in the case.") (citation omitted).

requirements in domestic relations cases, particularly where notice has been directly given to the parties.") (citations omitted).

Moving to the merits of Father's appeal, he presents the following nine issues for our review:

1. Whether the trial court abused its discretion and erred as a matter of law in permitting excessive, irrelevant, and speculative discovery requests in violation of Pennsylvania Rule of Civil Procedure 1930.5 and Pennsylvania caselaw?

2. Whether the trial court abused its discretion and erred as a matter of law in granting the [Mother's] Motion for Discovery without sufficient evidence to support the claim of unreported income and whether the discovery order infringes upon the [Father's] due process rights given the lack of concrete evidence?

3. Whether the trial court abused its discretion and erred as a matter of law in admitting and relying on [a] confidential probation office document and whether such use constitutes a breach of privacy and due process rights?

4. Whether the trial court abused its discretion and erred as a matter of law in issuing contempt orders, imposing fees, and ordering incarceration based on speculative claims, unsupported by relevant or tangible evidence, in violation of due process requirements?

5. Whether the trial court demonstrated bias and improperly exercised judicial discretion by allowing expansive discovery, admitting confidential and improperly obtained evidence, and favoring opposing counsel's speculations without factual substantiation, granting contempt and sanctions, thereby violating the [Father's] right to an impartial tribunal?

6. Whether the trial court failed to apply proper legal standards in determining the scope of permissible

discovery in child support cases, contrary to Pennsylvania law, and improperly allowed "discovery on discovery" without consideration of relevance and proportionality?

7. Whether the trial court's improper discovery rulings, wrongful contempt orders, and reliance on improperly obtained evidence collectively violated the [Father's] constitutional right to due process, warranting reversal of the trial court's order?

8. Whether the trial court erred in admitting the [Mother's] Discovery Motion, ignoring the fact that the [Father] is employed by another company, that the business in question has not operated since 2017 and, having no income, was not required by the IRS code and/or law to file taxes, and that the personal taxes presented to [the trial court] clearly indicate the [Father] has no additional income; however, the [trial court] [o]rdered the [Father] to provide historical tax returns that do not exist?

9. [C]ontinuous form of the error

Father's Brief at 7-9. Although Father raises nine issues in his statement of the questions involved, he collapses these into six issues within the argument section of his brief. He labels these six issues as: A) improper discovery process; B) breach of confidentiality and privacy rights; C) improper contempt orders, imposition of fees, and incarceration; D) bias and judicial discretion; E) failure to apply proper legal standards; and F) violation of due process rights. Thus, we will address the six issues that Father argues in his brief.

In his first appellate issue, Father argues that the trial court erred and abused its discretion by allowing Mother's counsel to "demand excessive and speculative discovery," which violated Pennsylvania Rule of Civil Procedure 1930.5. Father's Brief at 18. Father claims that the scope of Mother's

discovery requests, which included tax returns from 2016 to the present, was overly broad and burdensome. *See id.* Father contests that he owned and operated Taurus Star Construction during that period. *See id.* at 19. Father also claims that Mother's request to depose his current employer due to allegations that he intentionally reduced his overtime hours was speculative and lacked a factual foundation. *See id.*

The trial court explained that Mother requested discovery based upon her belief that Father had unreported income relevant to the support matter. *See* Trial Court Opinion (T.C.O.), 1/15/25, at 7-8. Mother averred that Father stated during a support conference that he had an interest in Taurus Star Construction, but he refused to provide the tax returns. *See id.* at 7. The court explained that the permitted discovery was relevant to the child support matter because the discovery permitted Mother to obtain tax information regarding a business potentially affiliated with Father. *See id.* at 8. Thus, "the discovery related to potentially undisclosed income that would impact the ordered support. The discovery request was not overly broad or excessive contrary to Father's arguments." *See id.*

Related to discovery in domestic relations matters, Pennsylvania Rule of Civil Procedure 1930.5 provides:

> (a) There shall be no discovery in a simple support, custody, Protection from Abuse, or Protection of Victims of Sexual Violence or Intimidation proceedings unless authorized by order of court.

(b) Discovery shall be available without leave of court in accordance with Pa.R.C.P. Nos. 4001--4025 in alimony, equitable distribution, counsel fee and expense, and complex support proceedings.

Pa.R.C.P. 1930.5.  It is undisputed that this support matter was not deemed complex and is instead a simple support matter.  Thus, the parties could engage in discovery only if authorized by court order.  ***Id.***

When reviewing the propriety of a discovery order, our standard of review is whether the trial court abused its discretion.  ***See King v. Kappa Sigma Fraternity***, 331 A.3d 695, 699 (Pa. Super. 2025), *reargument denied* (Mar. 20, 2025) (citation omitted).  "A trial court may abuse its discretion by making a ruling that is 'manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.'"  ***Id.*** (citation omitted).

Here, as noted, Mother filed a motion for discovery pursuant to Rule 1930.5.  The trial court ultimately granted Mother's motion limited to ordering Father to provide the business tax returns and permitting Mother to serve a subpoena on Father's employer for purposes of a deposition.

Thus, as the trial court explained, the permitted discovery was directly related to the support matter and intended to determine if Father had any undisclosed income or had adjusted his income to avoid his support obligation.  We understand Father's arguments; he feels that the discovery was excessive and speculative.  However, Father cites no case law to support his arguments,

in circumvention of our Appellate Rules.[2]  **See** Pa.R.A.P. 2119(a)-(b).

Moreover, this essentially comes down to a credibility determination.  Mother

presented a motion arguing that discovery was necessary because of her

beliefs related to Father's income; Father now argues that those beliefs were

speculative.  The trial court clearly felt that Mother presented enough evidence

to warrant limited discovery.  We discern no abuse of discretion in this

determination.  Father's first issue merits no relief.

In his second appellate issue, Father raises a litany of supposed errors

related to the "discovery process" in this case.  **See** Father's Brief at 20-26.

He argues that the trial court erred and abused its discretion by "admitting

and relying on a confidential document obtained from [Father's] probation

officer" in violation of Pennsylvania Rules of Criminal Procedure 702 and 703.

**See id.** at 20.  Father claims that the trial court subsequently erred by denying

his motion to suppress this evidence.  **See id.** at 21.  He alleges that the court

erred by overruling his objection to admitting "additional speculative evidence

(wedding pictures)" during an October 2, 2024 hearing.  **See id.** at 22.

The court responded to Father's arguments as follows:

> [The trial court] entered an Order on October 3, 2024
> denying the Motion to Suppress.  [Its] Order provided the
> following reasons for denying the Motion to Suppress:

---

[2] The sole case Father cites is, verbatim: "Hordis v. Hordis, 714 A.2d 1111 (Pa. Super. Ct. 1998)."  Father's Brief at 18.  We have found no case captioned Hordis v. Hordis at that reporter citation or otherwise.  Nor have we found any case using a 714 A.2d 1111 citation.

[Father] requests that [the trial court] suppress evidence via a Motion to Suppress and Vacate [Judgment] due to violations of Pennsylvania's Criminal Rules of Procedure in a civil Domestic Relations matter. Accordingly, [Father's] requested relief cannot be granted. In addition, [the trial court] disposed of the issues [Father] raises in his Motion to Suppress Evidence during the Contempt Hearing held on July 24, 2024. [The trial court] declined to reconsider [its] Order dated July 24, 2024, upon receiving [Father's] Motion for Reconsideration dated August 23, 2024. For these reasons, [Father's] Motion to Suppress Evidence and to Vacate Judgment is DENIED.

*See* Order dated October 3, 2024.

The instant matter is not a criminal matter. [The trial court] maintain[s] that [Father's] Motion to Suppress evidence was properly denied as [Father] has not provided a proper legal basis for the exclusion of documents obtained by [Mother] in this domestic relations matter. [. . .]

T.C.O. at 8-9 (footnote omitted).

We begin by noting that when Father attempted to directly appeal the order denying his motion to suppress, this Court noted that "[t]here does not appear to be a case or controversy at issue for this Court to review since this is a child support matter and not a criminal matter." Order, 11/25/24. We reiterate that this issue relates to a motion to suppress evidence, which is a criminal motion. **See** Pa.R.Crim.P. 581. However, this is not a criminal case; it is a civil, domestic relations matter. Thus, it is still unclear to us if there is a case or controversy at issue for this Court to review.

Moreover, Father has impeded our review of his claim by failing to tell us, in his appellate brief, what "confidential document" he is referring to.

Father fails to explain what the document was or what it contained. Nor does he tell us where in the record this document is, so that we can review it to determine its propriety in this case. In his brief, Father vaguely references a "confidential document that was admitted and relied on during the July 24, 2024 contempt hearing and order." Father's Brief at 21 (citation omitted). At the hearing, Mother's counsel referred to a receipt for Father's wedding that she received from the probation office. *See* N.T., 7/24/24, at 10-11. However, Father did not object to this evidence at that time, beyond later stating that he did not agree with what had been said regarding the business. *See id.* at 12; Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Additionally, it does not appear from the record that the wedding receipt was entered into evidence during the hearing, and there is no indication that the court relied on that document. Indeed, when Father brought this matter up again at the October 2, 2024 hearing, he seemingly admitted that the document was not in the record. *See* N.T., 10/2/24, at 10 (Father stating "it doesn't seem like it is in the record. However, we have on the testimony she talks about this evidence."). Mother's counsel then explained again what happened, and Father objected based on "speculations." *See id.* at 13. The trial court overruled Father's objection and noted that the matter had already been discussed in July. *See id.* Given the lack of record evidence or cogent argument on this issue, we fail to see how we can grant Father relief.

- 13 -

Further, Father broadly cites Pennsylvania Rules of Criminal Procedure 702 and 703, without specifying which specific subsections of those Rules apply. Rule 702 relates to aids in imposing sentence, specifically pre-sentence investigation reports and psychiatric or psychological examinations. *See* Pa.R.Crim.P. 702. Rule 703 relates to the disclosure of pre-sentence reports. *See* Pa.R.Crim.P. 703. Again, Father fails to tell us if the document he refers to was a pre-sentence investigation report or a psychiatric or psychological examination such that these Rules apply to it.

We reiterate to Father that this Court will not act as an advocate or develop arguments on behalf of an appellant. *Interest of R.H.*, 320 A.3d 706, 716 (Pa. Super. 2024) ("It is not the obligation of this Court [] to formulate Appellant's arguments for him.") (citation omitted); *see B.S.G. v. D.M.C.*, 255 A.3d 528, 535 (Pa. Super. 2021) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted). Nor will we scour a record to find evidence to support an appellant's argument. *See Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived.") (citation omitted). Father fails to provide us with enough information to review this claim; thus, he has waived it.

As for Father's wedding pictures, Mother introduced those as evidence that he had a lavish wedding in Romania. *See* N.T., 10/2/24, at 13. This aligned with Mother's theory that Father had undisclosed income from another source. Father objected to "speculations" about his wedding reception and objected to the wedding pictures based on relevance. *See id.* at 13-14. Although the trial court admitted the pictures, Judge Sletvold specifically noted that she was not sure how much weight she would give them in that proceeding because the issue before her at that time was "more of a legal argument matter." *See id.* at 14-15. Instead, Judge Sletvold admitted the pictures "for purposes of whatever appellate record we are creating." *Id.*

This Court has explained that "admissibility or exclusion of evidence are subject to the abuse-of-discretion standard of review." *Hutchinson v. Verstraeten*, 304 A.3d 1268, 1273 (Pa. Super. 2023) (citation omitted). Further, our Supreme Court has explained that we "cannot find an abuse of discretion merely for an error of judgment, unless, in reaching a conclusion, the trial court overrides or misapplies the law; or its judgment is manifestly unreasonable; or the evidence of record shows that the court's judgment exercised is manifestly unreasonable or lacking in reason." *Id.* (citing *Commonwealth v. Baker*, 766 A.2d 328, 331 (Pa. 2001)).

Father fails to cogently argue – much less persuade us – that the trial court abused its discretion by admitting pictures of his purported wedding. The crux of the underlying support matter and resulting discovery process was related to Father's income, and potentially undisclosed income he was

receiving from Taurus Star Construction. We discern no abuse of discretion in the trial court's decision to admit the pictures, over Father's objection, given that Father's potential income was highly relevant to the underlying support matter. Moreover, the court did not increase Father's net income based on the pictures. Thus, Father suffered no prejudice even if the evidence was not relevant. Father's second issue merits no relief.

In his third appellate issue, Father argues that the trial court improperly held him in contempt "based on speculative claims and assumptions rather than clear evidence of willful non-compliance." Father's Brief at 26. Father claims that his "legitimate objections to the excessive discovery requests were ignored, and the contempt order was issued without proper consideration of the facts." *Id.* Further, the sanctions imposed were punitive rather than coercive. *Id.* at 27. Father argues that the trial court overlooked evidence of his financial and logistical inability to comply fully with the court's order. *See id.* Father also challenges the purge conditions of paying $500 and signing unaltered IRS forms as placing an undue burden on him. *See id.* at 28. Lastly, he claims that the "sixty-day jail sentence exceeded what was reasonably necessary to secure compliance." *See id.*

The trial court explained its rationale related to contempt as follows:

> Here, the contempt at issue is regarding [Father's] refusal to comply with [the trial court's] discovery order. Prior to [the trial court's] October 3, 2024 Order granting [Mother's] Petition for Contempt, [the trial court] had previously found [Father] in contempt in July 2024. Thereafter, [Mother] filed another Petition for Contempt on

August 7, 2024. [The trial court] listed the Petition for Contempt to be heard on October 2, 2024. Upon a hearing being held on the Petition for Contempt, [the trial court] entered an Order on October 3, 2024 finding [Father] in contempt. A hearing was held on October 16, 2024, where [the trial court] took painstaking lengths to afford [Father] an opportunity to comply with [its] Orders. [Father] repeatedly refused to comply with [the trial court's] Orders. Accordingly, [the trial court] found [Father] in willful contempt and directed [Father] to undergo a period of imprisonment for sixty (60) days. [Father] was permitted to purge himself of the contempt by paying $500.00 and signing unaltered IRS forms for discovery purposes. [Father] purged himself of the contempt by October 17, 2024.

There is no dispute that [Father] had repeatedly refused to comply with the discovery orders entered by [the trial court]. A finding of contempt with a period of imprisonment was the last resort used by [the trial court] to enforce [the trial court's] orders and gain [Father's] compliance with [its] orders. It is [the trial court's] position that the contempt findings and imposed sanctions as a result were not an abuse of discretion.

T.C.O. at 11-12 (internal citations and footnote omitted).

"When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citation omitted).

This Court has previously described the difference between civil and criminal contempt as follows:

Civil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of

> the general public. This distinction between civil and criminal contempt is important because the type of contempt being punished will determine the manner in which the contempt is to be adjudicated as well as the punishment which may be imposed. It must be noted that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive.

*Godfrey v. Godfrey*, 894 A.2d 776, 782 (Pa. Super. 2006) (citation omitted).

Here, as noted, the trial court's order found Father in willful contempt and ordered him to serve sixty days in the county jail. Trial Court's Order, 10/16/24. However, it also provided that Father could be purged of the contempt charge if he: 1) made a lump sum payment of $500, 2) signed all IRS forms provided by Mother's counsel without alteration, 3) provided the tax ID number for the business, and 4) the address of the business. *See id.* During the contempt hearings, the court clarified that the $500 purge would be credited to the outstanding attorney's fees that Father owed to Mother from prior court orders. *See* N.T., 10/16/24, at 53; N.T., 10/17/24, at 2. The court also made a judicial finding, on the record, that Father had the ability to pay $500. *See* N.T., 10/16/24, at 50. Thus, because Father had the ability to purge himself of the contempt charge by complying with the court's directives, the contempt was civil, rather than criminal, in nature. *See Godfrey*, 894 A.2d at 782 (citation omitted).

To sustain a finding of civil contempt,

> [T]he complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which [he] is alleged to have disobeyed; (2) that the act constituting the

- 18 -

contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Harcar**, 982 A.2d at 1235 (citation omitted).

On appeal, Father abandons any argument related to the first prong of the contempt charge, *i.e.*, whether he had notice of the underlying discovery order. However, we observe that Father was ordered multiple times to provide Taurus Star Construction's tax returns, to submit certifications of non-filing, or to sign authorizations to allow Mother's counsel to obtain the returns from the IRS. Father repeatedly failed to follow those orders. Again, Father does not argue that he did not have notice of those orders. Nor does Father argue that he was unaware of or did not understand his obligation.

Instead, Father centers his argument on the contention that he was not in willful disobedience of the court order because he had legitimate objections to the discovery requests, and he was financially and logistically unable to fully comply. It is unclear if this means Father is arguing that his refusal was not volitional or that he did not act with wrongful intent, or both.

However, we have already reviewed the propriety of the discovery and found Father's arguments to lack merit. Although Father baldly states that he was financially and logistically unable to fully comply with the court's orders, he fails to actually tell us, specifically, how or why he was unable to comply. As noted, we will not make this argument for him. **See R.H.**, 320 A.3d at 716 ("It is not the obligation of this Court [] to formulate Appellant's arguments for him.") (citation omitted); **B.S.G.**, 255 A.3d at 535 ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant

authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted); *Milby*, 189 A.3d at 1079 ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived.") (citation omitted).

Father previously argued to the trial court that Taurus Star Construction was not in operation and had not filed tax returns since 2016 or 2017. Even if we accept, for argument's sake, that Father's assertion is true, that does not excuse Father's failure to comply with the court's orders. Father could have submitted certifications of non-filing of tax returns. Father could have signed the authorizations for Mother's counsel, and then Mother's counsel would have found out directly from the IRS that no tax returns had been filed for those years. Thus, even if the business is not in operation, Father still had the present ability to comply with the court's orders regarding the business's tax returns. Additionally, the trial court had already heard, and rejected, Father's many objections to providing the tax returns or signing the authorizations. That Father still disagreed with the court's decision is not a lawful basis to ignore its orders. Thus, we discern no abuse of discretion in the trial court's determination that Father was in civil contempt; the evidence supports that his refusal was volitional, and he acted with wrongful intent.

We also reject Father's arguments related to the court's purge conditions being unduly burdensome, overly severe, and punitive rather than coercive. We note that in the paragraph containing these assertions, Father

cites no case law, nor anything in the record, to support these arguments, in circumvention of our Appellate Rules. *See* Pa.R.A.P. 2119(a)-(c).

Nevertheless, we have already determined above that this was civil contempt. Father's argument does not persuade us otherwise. Although Father may have felt punished, the record reflects that the trial court's purge conditions were intended to coerce compliance with its orders related to the business tax returns and to compensate Mother for her attorneys' fees that Father had failed to pay, despite being ordered to do so. *See Rhoades v. Pryce*, 874 A.2d 148, 151 (Pa. Super. 2005) ("The typical sanction for civil contempt is remedial in nature. For example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period.") (citation omitted). Further, after hearing evidence related to Father's ability to pay; the court made a judicial finding that he was able to pay the $500 purge amount, which was less than the total amount of counsel fees that Father owed to Mother. *See* N.T., 10/16/24, at 50. Father fails to tell us why he was unable to pay that amount. Thus, Father's third issue merits no relief.

In his fourth appellate issue, Father argues that Judge Sletvold erred by denying his motion for recusal. *See* Father's Brief at 30. Father claims that

there were concerns of judicial bias, evidenced by *ex-parte* communications between Judge Sletvold's chambers and Mother's counsel. *See id.* at 29. Although Father admits that these emails were later forwarded to him, he claims the "initial exclusion raised a legitimate appearance of impropriety." *Id.* at 32. Father also based his motion, in part, on the trial court's prior adverse rulings against him. *See id.* Father asserts that the trial court "failed to properly address substantial concerns regarding impartiality, appearance of impropriety, and procedural fairness." *Id.* at 31. Father also largely repeats his arguments regarding contempt; we have already addressed those arguments above.

The trial court explained its rationale related to recusal as follows:

> [Father] failed to produce evidence at the hearing [the trial court] held on his Motion for Recusal on October 2, 2024 showing a link between the communications of the undersigned's secretary with [Mother's] counsel and any bias. As stated in [the trial court's] Order dated October 3, 2024, [Father] was not copied on emails between the undersigned's secretary and [Mother's] counsel regarding issues surrounding the scheduling of a hearing on the parties' motions/petitions. These communications, which were initiated by [Mother's] counsel, were limited. The communications were between only the undersigned's secretary and [Mother's] counsel and pertained only to scheduling, not substantive matters. [Father] was properly notified of all scheduled hearings, appeared and was heard. He was never denied due process.
>
> In addition, upon recognition of that error, the undersigned's secretary subsequently copied [Father] on the entire email chain, apprising [Father] of the entire conversation between the undersigned's secretary and [Mother's] counsel regarding scheduling issues. [Father] failed to show that those emails amounted to a bias against

him. Here, recusal was not warranted as there was no bias against [Father].

T.C.O. at 13.

Our scope and standard of review regarding recusal is well-settled:

The denial of a motion to recuse is preserved as an assignment of error that can be raised on appeal following the conclusion of the case. We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge [herself] is best qualified to gauge [her] ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*Interest of D.R.*, 216 A.3d 286, 292 (Pa. Super. 2019), *affirmed*, 232 A.3d 547 (2020) (citation omitted).

Here, the record reflects that the alleged *ex-parte* communications consisted of an email chain between Judge Sletvold's secretary and Mother's counsel. Judge Sletvold was not involved in any of the communications. It appears from the email chain that Father was copied on the initial email from Mother's counsel to Judge Sletvold's secretary. Father was then not copied on three subsequent emails (two sent from Judge Sletvold's secretary and one sent from an employee of Mother's counsel's law firm). After that, Mother's counsel responded and again copied Father on the email. It appears that he was copied on all subsequent emails. More importantly, these emails appear in our certified record because Father attached them as an exhibit to his

motion for recusal. Thus, Father clearly received all emails in the email chain, even though he was not initially copied on three of them. Additionally, the email chain was not substantive in nature; it mainly dealt with scheduling issues. We fail to see how this shows that Judge Sletvold was biased against Father. We also fail to see how this shows an appearance of impropriety, such that reversal of Judge Sletvold's decision not to recuse is warranted.

Although Father claimed at the hearing that he thought the trial court was having communications with Mother's counsel that he was unaware of, he admitted that he did not have any proof. *See* N.T., 10/2/24, at 6. Judge Sletvold assured Father that no such proof existed because she does not engage in *ex-parte* communications. ***See id.*** Further, the mere fact that Judge Sletvold previously ruled against Father does not, by itself, warrant recusal.

We remind Father that our standard of review over a judge's denial of a motion to recuse is ***exceptionally deferential***. ***See D.R.***, 216 A.3d at 292 (citation omitted) (emphasis added). Additionally, "a trial judge should grant the motion to recuse ***only*** if a doubt exists as to his or her ability to preside impartially or if impartiality can be ***reasonably questioned***." ***See id.*** (citation omitted) (emphasis added). Clearly, Judge Sletvold determined that there was no doubt regarding her ability to preside impartially. And Father provided very limited evidence regarding whether impartiality could even be reasonably questioned. Judge Sletvold specifically stated in her opinion that "recusal was not warranted as there was no bias against [Father]." T.C.O. at

13. Given our extremely deferential standard of review, we discern no abuse of discretion. Father's fourth issue merits no relief.

In his fifth issue, Father largely repeats the arguments he made throughout his brief by asserting that the court failed to apply proper legal standards related to discovery. *See* Father's Brief at 33-36. We have already addressed these arguments above; thus, we need not address them again.

In Father's final appellate issue, he argues that the cumulative effect of the aforementioned alleged errors violated his due process rights. *See* Father's Brief at 36. Father alleges that the "cumulative procedural irregularities and substantive issues undermine the fairness and adequacy of the proceedings" in this case. *Id.* While Father "acknowledges his physical presence at hearings and the ability to speak, he challenges the adequacy and fairness of [those] opportunities." *Id.* at 37. Further, he broadly raises a litany of issues related to the trial court: 1) dismissing his objections without proper consideration, 2) addressing his concerns perfunctorily rather than substantively, 3) refusing to reconsider prior orders, and 4) directing him to provide requested tax documents within 14 days of its October 3, 2024 order. *See id.* at 37-38. Father also claims that he was confused regarding "the procedural framework and his rights." *See id.* at 38.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted) (emphasis in original). As Father notes, "[d]ue process

- 25 -

requires that a party who will be adversely affected by a court order must receive notice and a right to be heard in an appropriate hearing." ***McKinney v. Carolus***, 634 A.2d 1144, 1146 (Pa. Super. 1993) (citations omitted).

We reject Father's due process claim. As noted by the trial court, Father ultimately admitted at the October 16, 2024 hearing that he had notice and an opportunity to be heard, during the following exchange:

> THE COURT: [Father], do you dispute, sir, that notice and opportunity were afforded to you with respect to prior Orders that were entered compelling you to produce the tax documents?
>
> [FATHER]: Yes, Your Honor?
>
> THE COURT: How so.
>
> [FATHER]: However -- I am sorry?
>
> THE COURT: How so? How were you deprived of notice and opportunity with respect to the entry of the prior Orders compelling you and ordering you to produce the tax documents? You showed up in court every time, correct?
>
> [FATHER]: Yes.
>
> THE COURT: You were heard every time; were you not?
>
> [FATHER]: (Nods head.)
>
> THE COURT: We made a record each time?
>
> [FATHER]: Yes.
>
> THE COURT: You stated your reasons why you did not think you should be compelled to produce them? Did you not do that?
>
> [FATHER]: Yes.

THE COURT: Can you then help me understand your position of how you were denied due process, with the entry of the Orders?

[FATHER]: I am a little bit confused on that, Your Honor.

THE COURT: How can I help you understand, sir?

[FATHER]: Can you explain to me[?]

THE COURT: You were issued at least three prior Court Orders to produce the tax documents, correct?

[FATHER]: Yes.

THE COURT: And each time before you were ordered to produce them, you appeared in court, correct?

[FATHER]: Yes.

THE COURT: And you made a record with the Judge [. . . .]. But I want to be clear that each time you did come to court, you were provided an opportunity to speak out against having to produce these documents, correct, sir?

[FATHER]: Yes, without the consideration that on non-operating business, it is impossible to create something that did not exist.

THE COURT: Sure. And you have never filed a certification as to non-filing, sir?

[FATHER]: Yes.

THE COURT: Do you agree with me that two weeks ago I advised you on the record -- I advised you that today -- that there could be enforcement of those Orders today, correct?

[FATHER]: Yes.

THE COURT: We even discussed the possibility of prison, correct?

[FATHER]: I believe so.

N.T., 10/16/24, at 39-41. Shortly thereafter, Father requested an attorney, and he was later provided with one. *See id.* at 42, 47-50. The trial court took a recess and provided Father and his attorney with an unlimited amount of time to speak. *See id.* at 48-51. Although Father claims that the part of the transcript cited above underscores his confusion regarding his rights, the trial court attempted to assist Father. We also remind Father that he chose to proceed *pro se* for the majority of these proceedings, as was his right. However, "any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *See Commonwealth v. Vurimindi*, 200 A.3d 1031, 1037-38 (Pa. Super. 2018) (citation omitted).

Putting aside Father's admissions to the trial court, he does not argue to us, on appeal, that he did not have notice and an opportunity to be heard at any point during the proceedings. Further, we have already considered, and rejected, Father's arguments regarding discovery, confidential records, contempt, and judicial bias; thus, we reject the contention that there was any cumulative effect of errors leading to a due process violation. Although Father broadly "challenges the adequacy and fairness" of his opportunities to be heard, he fails to tell us with sufficient specificity, or citations to the record, where any proceedings were inadequate or unfair. *See* Father's Brief at 37. Father simply repeats his arguments that his objections to the court's discovery orders were dismissed without proper consideration of their legal

merit. *See id.* Similarly, he broadly claims the court addressed his concerns "perfunctorily rather than substantively," but fails to provide any citations to the record or further information about when that occurred. *See id.*

We again remind Father that, on appeal, this Court will not act as an advocate or develop arguments on behalf of an appellant. *See R.H.*, 320 A.3d at 716 ("It is not the obligation of this Court [] to formulate Appellant's arguments for him.") (citation omitted). If an issue is not properly developed with citation to legal authority, it is waived. *See B.S.G.*, 255 A.3d at 535 ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted). Nor will we scour a record to find evidence to support an appellant's argument. *See Milby*, 189 A.3d at 1079 ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived.") (citation omitted).

We also reject Father's claims, again stated without any specificity, that the trial court dismissed Father's objections to its discovery orders without proper consideration, and that the court refused to reconsider prior orders. To the contrary, the court heard arguments related to discovery during at least three separate hearings on July 24, October 2, and October 16, 2024. Additionally, from January to October 2024, the court received, considered, and ultimately denied multiple motions filed by Father related to discovery. That Father disagrees with the trial court's denial of these motions does not

amount to reversible error. Given the amount of time the issue of discovery was litigated, we find Father's argument that the court refused to reconsider prior orders to be specious. We also remind Father that we have procedural rules in place to prevent continuous, unending litigation, and a trial court cannot continuously review its prior orders indefinitely.

Lastly, Father's argument that the trial court's directive to provide the requested tax documents within fourteen days of its October 3, 2024 order placed undue pressure on him and limited his ability to prepare an adequate response is meritless. In actuality, this order came after Father had previously been ordered to provide the tax returns or sign authorizations multiple times. Therefore, Father was well aware of his obligation by the time the October 3 order was entered. Father's final issue merits no relief.

In sum, we discern no error of law or abuse of discretion upon review of the trial court's decisions related to discovery, contempt, and recusal.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/26/2025